Charles E. SMITH, Appellant,

v.

STATE OF IDAHO and Paul W. Bright, Sheriff of Ada County, Idaho, Appellees.

No. 20989.

United States Court of Appeals Ninth Circuit.

Feb. 9, 1967.

Rehearing Denied March 20, 1967.

151

Allen R. Derr, of Derr & Derr, Boise, Idaho, for appellant.

Allan G. Shepard, Atty. Gen. for Idaho, M. Allyn Dingel, Jr., Deputy Atty. Gen., John S. Simko, Asst. Atty. Gen., Boise, Idaho, for appellee, State of Idaho.

Wayne L. Kidwell, Pros. Atty., Robert C. Youngstrom, Chief Deputy Pros. Atty., Ada County, Boise, Idaho, for appellee, Paul W. Bright, Sheriff of Ada County.

Before HAMLEY and JERTBERG, Circuit Judges, and BYRNE, District Judge.

JERTBERG, Circuit Judge:

Appellant appeals from an order of the United States District Court for the District of Idaho quashing a writ of habeas corpus sought by appellant after his arrest by authorities of the State of Idaho for extradition to the State of Missouri on a charge of first degree murder. We affirm the order.

The history of the case leading up to the filing by appellant of a petition for

writ of habeas corpus in the United States District Court may be summarized as follows:

Early in 1963, appellant was arrested by the Sheriff of Ada County, Idaho, under authority of a rendition warrant of the Governor of Idaho. The warrant was issued pursuant to a request from the Governor of Missouri for the apprehension and extradition of appellant to Missouri on a charge of first degree murder, to wit, the murder of one Donna Jean Smith on or about October 26, 1961, at Kirksville, Adair County, Missouri.

The demanding papers from Missouri aver that appellant stands charged of the crime by an affidavit made before a magistrate. The complaint was sworn to by the county prosecuting attorney before the county magistrate and is dated April 8, 1963. The rendition warrant issued by the Governor of Idaho is dated April 16, 1963, and states that appellant "stands charged by the affidavit found in the County of Adair" in the State of Missouri.

After his arrest and during his confinement, appellant petitioned for writ of habeas corpus in the District Court of the Third Judicial District of the State of Idaho on May 9, 1963. The petition alleged that appellant was confined illegally because: 1) he was not a fugitive from justice; 2) the demanding papers did not substantially charge a crime; and 3) he was not the party sought. A writ of habeas corpus was issued the same day. The return to the writ, dated May 21, 1963, stated that appellant was being held under a warrant issued by the Governor of Idaho for extradition of appellant to Missouri. Attached to the return were the affidavits of six Missouri residents. In his answer to the return, appellant denied the validity of the rendition warrant and further alleged that: 1) he was not in the State of Missouri on or about October 26, 1961; 2) the rendition warrant was faulty on its face; 3) the documents supporting the warrant were faulty; 4) proper extradition procedures had not been complied with; and 5) he was not the person sought. In addition, in support of his allegation that he was not in Missouri on the date in question, appellant attached to his answer the affidavit of one Harry Lee Dodd.

A hearing was held on June 10, 1963. Appellant introduced into evidence the following:

1. A letter dated June 7, 1963, from the Missouri Department of Public Health and Welfare, Division of Health, certifying that there was no death certificate on file for the victim of the alleged murder (Donna Jean Smith);

2. A map showing cities of Missouri and Oklahoma;

3. Certified copies from the Secretary of State of Idaho of all original documents in connection with appellant's extradition papers; and

4. A letter dated May 17, 1963, to appellant's counsel from the Sheriff of Muskogee, Oklahoma, stating that appellant was incarcerated in the Muskogee County Jail on October 27, 1961, but that the Sheriff had no information as to appellant's whereabouts on October 25 and 26, 1961.

The State introduced the following evidence:

1. A copy of the Idaho rendition warrant;

2. The affidavits of six Missouri residents (over objection of appellant). Five of the affiants were residents of Kirksville, Missouri. The affidavit of Fern Miller stated that she lived across the street from appellant's residence and saw appellant at his home on the evening of October 25, 1961. The affidavit of Bruce Albertson stated that appellant visited Albertson's home in Kirksville on October 24, 1961. The affidavit of Betty Douglas stated that appellant visited on October 11, 1961, the bank in Kirksville where she was employed. The affidavit of Mrs. J. T. Fickel stated that she was a neighbor and acquaintance of appellant and his family and saw appellant at his home in Kirksville on October 25, 1961. The affidavit of Laura Cameron stated that she provided babysitting services for appellant's daughter on either October 24 or

25, 1961, and that appellant was personally in her home on that occasion. The sixth affidavit denominated "Affidavit of Principal Complaining Witness as to Identity", is that of Olin E. Johnson, the Sheriff of Adair County, Missouri. Attached to the affidavit is a photograph of a person which the affidavit states is contained on F.B.I. Wanted Poster bearing Identification Number 3633, dated December 19, 1962. The affiant avers that he identified said photograph as being one of Charles E. Smith; that the said Charles E. Smith is the identical and same person as the Charles E. Smith presently charged with the crime of first degree murder in Kirksville, Adair County, Missouri, for the murder of Donna Jean Smith on or about the 26th day of October, 1961.

Appellant read into the record the deposition of Harry Lee Dodd, taken on June 7, 1963. Dodd stated that he had known appellant since 1950; that on October 25, 1961, at about 9:15 P.M., appellant picked up Dodd in Kansas City, Missouri, and drove him, together with appellant's wife and baby, to Tulsa, Oklahoma; that appellant left Dodd there about 10:00 P.M. on October 26, 1961, and appellant's wife, the alleged victim, was still alive; that appellant's car, besides being heavily loaded and pulling a trailer, was in poor repair, and consequently, it would have been impossible for appellant to drive the 400 to 410 miles from Tulsa to Kirksville and then back to Tulsa by the morning of October 27, 1961.[1] Dodd further stated that he had been convicted of a felony in 1951, that he had been committed several times to mental institutions, was twice adjudged insane, was at the time of the deposition awaiting transfer to a mental institution, and had been appellant's cell mate in the Ada County Jail since April, 1963.

On June 12, 1963, the state district court found that appellant was lawfully in the custody of the Ada County Sheriff, under valid and proper warrants and documents, that appellant was properly identified as the person demanded by Missouri and was a fugitive from that state. The district court quashed the writ previously issued and remanded appellant to the custody of the Ada County Sheriff for extradition to Missouri.

Appellant appealed to the Idaho Supreme Court. On June 11, 1965, that court affirmed the district court, holding that the complaint charging the crime was sufficient for extradition purposes; that the affidavits of the Missouri residents were properly received as evidence of appellant's presence in the demanding state, and that appellant's evidence, i. e., the deposition of Harry Dodd and the letter from the Muskogee County Sheriff, failed to overcome the prima facie case established by the Governor's warrant. Smith v. State, 89 Idaho 70, 403 P.2d 221 (1965). The United States Supreme Court denied certiorari on February 21, 1966. 383 U.S. 916, 86 S.Ct. 906, 15 L. Ed.2d 669 (1966).

On February 24, 1966, appellant submitted to the Federal District Court for the District of Idaho his petition for a writ of habeas corpus. An order issuing the writ on February 23, 1966, was filed by that court on February 25, 1966. In his petition, appellant alleged that he was illegally confined in violation of his constitutional rights in that: (1) he was not in Missouri during the time in question; (2) the papers upon which the warrant was based did not substantially charge a crime; and (3) he was not the party sought. He further alleged that he had exhausted his state court remedies and had been denied certiorari by the U. S. Supreme Court.

Appellee filed a return to the writ on February 28, 1966. In it, appellee alleged that appellant was detained by authority of a rendition warrant from the Governor of Idaho, that appellant had previously filed a petition for writ of habeas corpus on identical grounds before Judge Clark of the same court on June 7, 1963, which petition was denied on June 17, 1963;

---

1. Appellant alleged that he was arrested in Oklahoma at about 4:30 A.M. on October 27, 1961, and thereafter imprisoned in that state.

that appellant's cause had been before the Idaho District and Supreme Courts and the U. S. Supreme Court and in each instance the decision was adverse to appellant, and therefore appellant had already received full hearings on all his asserted rights.

On February 28, 1966, the federal district court held a hearing on appellant's claims. Appellee Sheriff testified that he was holding appellant under authority of the rendition warrant issued by the Governor of Idaho. Said warrant was admitted into evidence. The record of appellant's case in the state district court, the opinion of the Idaho Supreme Court, and the record submitted to the U. S. Supreme Court were all admitted into evidence by stipulation of the parties. However, appellant reserved his objection to any affidavits offered in those proceedings to prove appellant's identity and presence in the demanding state. The hearing was then continued to allow appellant time to complete a traverse to appellee's return to the writ.

Appellant filed his traverse to appellee's return on March 7, 1966. In it, he alleged: 1) that the rendition warrant was defective on its face because it referred only to an "affidavit found in the county" rather than to "an affidavit made before a magistrate," as required by statute; 2) that the state court proceedings were incomplete because of claimed newly-discovered evidence which was unavailable at the time of those proceedings, and which claimed evidence related to appellant's fugitivity; and 3) that he should be allowed to take further depositions and present other evidence in support of his claims. Appellant also moved the court's permission to take the deposition of a new witness, one Clay, within twenty days. At the hearing on this motion, appellant contended that this new evidence required another hearing and the taking of additional evidence. In an opinion dated March 22, 1966, the district court rejected this contention and denied appellant's motion on the grounds that, for extradition purposes, the state court hearing was complete. The court

further held that the state court applied correct legal principles and that its resolution of conflicting evidence was not clearly erroneous.

■■■ Proceedings for the interstate extradition of criminals are controlled by federal law, being provided for directly by the Constitution and implemented by federal legislation. The federal extradition statute "was enacted for the purpose of controlling the subject of interstate rendition, and its provisions were intended to be dominant and as far as they operated controlling and exclusive of state power." Day v. Keim, 2 F.2d 966, 967 (4th Cir. 1924). "Extradition proceedings are not creatures of state law, but are controlled by the Constitution * * * and by [18 U.S.C. § 3182]" United States ex rel. McCline v. Meyering, 75 F.2d 716, 717 (7th Cir. 1934).

The Constitution provides, Article IV, Section 2:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

This constitutional mandate is effected by 18 U.S.C. § 3182 [62 Stat. 822 (1948)]:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the

executive authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

■■ Though its basic purpose is to serve the judiciary, extradition is a summary proceeding within the executive branch of the government. Extradition was

"to provide a summary executive proceeding by the use of which the closely associated states of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one state an asylum against the processes of justice of another.

\* \* \* \* \* \*

"Its design was and is, in effect, to eliminate, for this purpose, the boundaries of states, so that each may reach out and bring to speedy trial offenders against its laws from any part of the land." Biddinger v. Commissioner of Police, 245 U.S. 128, 132, 133, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917).

As such, it is not a means of determining the guilt or innocence of the accused. Rather, it is a means of ascertaining whether the evidence is sufficient to detain and deliver the accused for trial in another state.

"Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts, as if they were penal laws, but liberally to effect their important purpose, \* \* \*.

" \* \* \*, they are not sending him [the accused] for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution but in the manner provided by the state against the laws of which it is charged that he has offended." Biddinger v. Commissioner of Police,

245 U.S. 128, 133, 38 S.Ct. 41, 43 (1917).

■ When the governor of the asylum state receives the authenticated indictment or complaining affidavit from the governor of the demanding state, there are only two inquiries relevant to the decision to issue a rendition warrant for the arrest of the accused. The first is whether the accused has been substantially charged with a crime under the laws of the demanding state. The second is whether the person demanded is a fugitive, that is, whether he was within the demanding state at the time of the alleged offense. The first is a question of law; the second, a question of fact.

"Under 18 U.S.C. § 3182 \* \* \* the governor of the asylum state has for decision the legal question whether the demanded person has been substantially charged with a crime and the factual question whether he is a fugitive from justice [citations omitted]. \* \* \* On habeas corpus review of his order in a court of the asylum state, the inquiry is limited to the same two questions." Bruzaud v. Matthews, 93 U.S.App.D.C. 47, 207 F.2d 25, 26 (1953). See also Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885).

Appellant now contends that he should have been granted a third hearing because of newly-uncovered evidence. He argues that he should have been given leave to take the depositions of additional witnesses from Oklahoma. In his traverse to appellee's return to the writ, he alleges:

"This evidence was not available at the time of the state court proceedings because of lack of responses from various parties and a search conducted to find names of persons who may have seen petitioner [appellant] and his wife in the state of Oklahoma, far away from the State of Missouri on October 26, 1961, the date on which petitioner is charged by Missouri with the crime for which extradition is sought. Petitioner has discovered the names of Billie Clay, Sr., Warner, Okla-

homa; Charlie Myers, Porter, Oklahoma; T. C. Stockstill, Haskell, Oklahoma; Ralph Jackson, Muskogee, Oklahoma; Ira Moore, Haskell, Oklahoma; and Paul Ferguson, Muskogee, Oklahoma; and petitioner is securing the name of the town marshal of Bixbee, Oklahoma and others, all of whom will show that petitioner was in the state of Oklahoma with his wife, who was then alive, throughout October 26, 1961, and the early morning hours of October 27, 1961."

■ As noted above, it is true that the question of presence in the demanding state is the sole question on which evidence may be admitted at a habeas corpus hearing.

"* * * when the extradition papers required by the statute are in the proper form the only evidence sanctioned by this court as admissible on such a hearing is such as tends to prove that the accused was not in the demanding state at the time the crime is alleged to have been committed * * *." Biddinger, supra, 245 U.S. at 135, 38 S.Ct. 41, 43.

■■ The new evidence which appellant seeks to offer does allegedly relate to his presence in the demanding state. Appellant then relies on Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), to support his claim for the holding of another evidentiary hearing to present his profferance. *Townsend* lays down six circumstances under which the federal court must grant an evidentiary hearing to a habeas corpus applicant:

"If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it ap-

pears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313, 83 S.Ct. at 757.

Appellant relies upon the fourth, fifth and sixth enumerated circumstances insofar as they all relate to newly-discovered evidence which was not available at the state court hearing. However, it is important to note that these circumstances are all based on the condition that the allegations, if proved at the hearing, would entitle the applicant to habeas relief. Here they would not. Even if all of the individuals listed by appellant claimed to have seen him in Oklahoma on or about October 26, 1961, this would present only a conflict in the evidence. For extradition purposes, such a conflict is not enough to release the accused.

"* * * we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed * * *.

"The record discloses only a conflict of evidence; the requirement which we have indicated has not been met * * *." South Carolina v. Bailey, 289 U.S. 412, 421–422, 53 S.Ct. 667, 671, 77 L.Ed. 1292 (1933).

■ Admittedly, the prisoner held for extradition has a heavy burden of proof. But this arises legitimately from the nature of an extradition proceeding, since essentially the court is reviewing the factual determination of the governor as to the presence of the accused in the demanding state, and the guilt or innocence of the accused is not in question.

"The inquiry whether the appellant is a fugitive from justice is one of fact, to be resolved by the [governor] to whom the demand for extradition is made, and his judgment thereon is not

subject to judicial impeachment by habeas corpus unless it conclusively appears that the person sought to be extradited could not be a fugitive from justice under the law." Brewer v. Goff, 138 F.2d 710, 712 (10th Cir. 1943).

The testimony of appellant's proposed witnesses, by deposition or otherwise, would not incontrovertibly establish that appellant was not within Missouri on or about October 26, 1961. Four of the six affiants (Fern Miller, Bruce Albertson, Mrs. J. T. Fickel, and Laura Cameron) supporting the demand for appellant's extradition swore to having seen appellant in Missouri during the two days immediately preceding October 26. This brings the claims of these affidavits within the time period stated in the complaining affidavit, "on or about the 26th day of October, 1961", sufficiently to conflict with any testimony which appellant's proffered witnesses might give as to appellant's whereabouts on October 26, 1961. The conflicting evidence appellant wishes to introduce can be fully explored and resolved at trial.

■■■■■ Appellant next argues that the use of *ex parte* affidavits was improper to prove substantive facts in a habeas corpus proceeding, since these affidavits constituted hearsay testimony and were not subject to cross-examination. The use of such affidavits in extradition proceedings has long been allowed.

"The principal complaint as to the discharge of the writ is based upon the consideration by the Governor of Louisiana, and the admission in evidence on the hearing below, of affidavits by residents of Utah that the appellant, whose picture was attached to each of such affidavits, was the person who committed the alleged crime. Such evidence properly may be considered in determining whether the person sought to be surrendered is or is not the one charged with crime, and whether he was or was not in the demanding state when the crime is alleged to have been committed." United States ex rel. Austin v. Williams, 12 F.2d 66, 67 (5th Cir. 1926).

In Munsey v. Clough, 196 U.S. 364, 374, 25 S.Ct. 282, 49 L.Ed. 515 (1905), the Court accepted an *ex parte* affidavit of one Whitney to show that the accused was in the demanding state at the time the crime was committed. This court has specifically allowed the use of such affidavits in a return to the show cause order in habeas corpus proceedings. See Lewis v. Johnston, 112 F.2d 451, 453 (9th Cir. 1940); Franzeen v. Johnston, 111 F.2d 817, 819–820 (9th Cir. 1940); Walker v. Johnston, 109 F.2d 436, 438 (9th Cir. 1940).[2] The reason for allowing such hearsay evidence is sound—that in extradition proceedings, it is often impractical to transport the witnesses from the demanding to the asylum state to have their testimony in person.

■■■■■ Appellant attacks the rendition warrant of the Governor of Idaho on the grounds that it states only that the required affidavit was "found in the County" rather than that it was "made before a magistrate". The latter language is extracted from 18 U.S.C. § 3182. The demanding executive authority is to produce "a copy of an indictment found or an affidavit made before a magistrate * * *." In our case, the Idaho rendition warrant states that appellant "stands charged by the Affidavit found in the County. * * *" However, this nonconforming language in Idaho's warrant is irrelevant. The statute is concerned

2. This case was reversed by the Supreme Court on the ground that such affidavits should not be the sole basis of disposition of controverted factual issues in an ordinary habeas corpus proceeding. Walker v. Johnston, 312 U.S. 275, 285, 61 S.Ct. 574, 85 L.Ed. 830 (1941). However, that reversal did not rule out the admissibility of such affidavits altogether, as appellant seeks to do. Furthermore, appellant has received two evidentiary hearings on the issue raised by those affidavits, and such hearings would meet the requirements of *Walker*, even if this were a non-extradition habeas corpus case.

with the papers produced by the demanding state, not those issued by the asylum state. Here, the requisition papers produced by Missouri specify that appellant "stands charges [sic] by an affidavit made before a magistrate." The complaining affidavit annexed thereto states clearly that it is "Before Helen M. Crabtree, Magistrate within and for the County of Adair and State of Missouri." Thus, the statutory requirement is satisfied.

■ Appellant contends that the complaining affidavit is still insufficient because it is based only on information and belief without stating the sources of information or grounds of belief. Appellant is inaccurate because that affidavit actually states that it is true and correct to the best of affiant's *"knowledge, information and belief"* (emphasis added). Thus, it avers personal knowledge of the affiant, and even in Rice v. Ames, 180 U.S. 371, 21 S.Ct. 406, 45 L.Ed. 577 (1901), relied upon by appellant, the three counts purportedly based on the personal knowledge of the complainant were upheld, although the fourth count, based only on "information and belief," was held insufficient. An averment of knowledge is adequate, and to invalidate this affidavit would merely penalize the Missouri authorities for including all three terms rather than the first alone. Furthermore, the affidavit charges the crime directly and in unequivocal terms. It in fact does state the source of information as being "the Affidavit of Olin E. Johnson," and Johnson's affidavit makes no reference to information and belief, but clearly accuses appellant of the crime.

■ Appellant points out that the demanding papers fail to state when the victim died and whether the victim was a human being. In support of this, he refers to the lack of any death certificate covering the alleged victim. He concludes that the demanding papers are thereby defective. His objections are of no substance in an extradition proceeding. The only question is whether the demanding papers substantially charge a crime, not whether they meet the common law technicalities of pleading. The cases in support of this proposition are numerous.

"The sufficiency of the indictment, as a matter of technical pleading, will not be inquired into on habeas corpus [citations omitted].

* * * * * *

"If it appear that the indictment substantially charges an offense for which the person may be returned to the state for trial, it is enough for this proceeding." Munsey v. Clough, 196 U.S. 364, 373, 25 S.Ct. 282, 49 L.Ed. 515 (1905). "The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the state from which he has fled." Pierce v. Creecy, 210 U.S. 387, 402, 28 S.Ct. 714, 718, 52 L.Ed. 1113 (1908). See also Hogan v. O'Neill, 255 U.S. 52, 55, 41 S.Ct. 222, 65 L.Ed. 497 (1921); Brown v. Fitzgerald, 39 F.2d 870, 872 (9th Cir. 1930); United States ex rel. Jackson v. Meyering, 54 F.2d 621, 622 (7th Cir. 1931), cert. denied, 286 U.S. 542, 52 S.Ct. 498, 76 L.Ed. 1280 (1932); Person v. Morrow, 108 F.2d 838, 840 (10th Cir. 1940).

■■ Appellant's final contention is that there is no showing in the record that an agent of the demanding state appeared within thirty days of appellant's arrest in compliance with 18 U.S.C. § 3182. Under the statute, if the agent does not so appear, "the prisoner may be discharged." It is to be noted initially that appellant did not raise this point in the court below, nor did he specify it in his points on appeal. We are therefore not compelled to consider it. Nevertheless, we do so and conclude that it is without merit. The arrest warrant issued by the Governor of Idaho is dated April 16, 1963; appellant's habeas corpus petition to the state district court was filed on May 9, 1963. There being in the record nothing to the contrary, we assume that

appellant was taken into custody by Idaho authorities between April 16, 1963, and May 9, 1963, inclusive. Therefore, he had been held under the authority of the extradition papers for less than thirty days before he took his case to the courts, where it has been continuously ever since. The State of Missouri is not to be penalized for awaiting the outcome of valid court proceedings, brought by appellant himself, before undertaking the expense of sending its agent to claim appellant for extradition.

The order appealed from is affirmed.