SHERIFF, CLARK COUNTY, NEVADA, Appellant, v. DONALD BALLARD THOMPSON, Respondent.

No. 5671

April 8, 1969                    452 P.2d 911

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *Janson F. Stewart,* Deputy District Attorney, Clark County, for Appellant.

*Raymond E. Sutton,* of Las Vegas, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

In this appeal we are to determine whether respondent Thompson should be extradited to the State of California to stand trial for the crime of grand theft.

On February 26, 1967 Thompson entered into a written contract with Mr. and Mrs. B. W. Williams of Sunnyvale, California, in which Thompson agreed to sell approximately $6,000 worth of rare coins owned by Mr. Williams. Thompson was a guest at the Williams' home in California from February 25 through February 27, 1967. He was then entrusted with the coins and left. About one-half of these coins were subsequently returned.

On February 27, 1968 a criminal complaint was filed in the municipal court for the Sunnyvale Judicial District, Santa Clara County, California, charging Thompson with grand theft under California's theft statute which consolidates the offenses of larceny, embezzlement and obtaining money under false pretenses, Cal. Pen. Code § 484 (West 1955).[1] See also Cal. Pen. Code § 490a (West 1955).[2] This was accompanied by a comprehensive affidavit of the investigating detective who swore out the complaint setting forth the facts underlying the filing of the complaint. An arrest warrant was issued pursuant to the complaint and affidavit.

An application for requisition was made to the Governor of California and on March 12, 1968 the Governor of California requested from the Governor of Nevada the extradition of Thompson. On March 14, 1968 the Governor of Nevada executed an executive warrant providing for Thompson's arrest and surrender to the California authorities. Thompson was arrested but was granted a writ of habeas corpus by the district court and was released from custody. The state here contends the writ was improperly granted. We agree.

Article IV, § 2 of the United States Constitution provides for the extradition of one who flees from one state to another

---

[1]"§ 484. THEFT DEFINED

"(a) Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. . . . For the purpose of this section, any false and fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question."

[2]"490a. 'THEFT' SUBSTITUTED FOR LARCENY, EMBEZ-ZLEMENT OR STEALING

"Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor."

to evade justice.[3] The asylum state in which such fugitive is found is constitutionally required to surrender him to the demanding state. This constitutional provision, however, is not self-executing. Kentucky v. Dennison, 65 U.S. (24 How.) 66, 104 (1860). For this reason in 1793 Congress enacted what is now 18 U.S.C. § 3182 providing for extradition of fugitives from justice.[4]

However, the federal statute does not provide a scope of extradition coextensive with the constitution. Innes v. Tobin, 240 U.S. 127 (1916). The states are left with the authority to implement some of the constitutional authority by their own legislation. Innes v. Tobin, supra. However, it is well-settled that the federal statute and the constitution require extradition only if the fugitive fled the demanding state to avoid prosecution. South Carolina v. Bailey, 289 U.S. 412 (1933); Innes v. Tobin, supra; Munsey v. Clough, 196 U.S. 364 (1905); Hyatt v. Corkran, 188 U.S. 691 (1903); United States v. Flood, 374 F.2d 554 (2d Cir. 1967); Smith v. Idaho, 373 F.2d 149 (9th Cir. 1967). While a criminal need not do within the demanding state every act necessary to complete his crime, he must at least effect an overt act there, coupled with an intent that this act be a material step towards accomplishing that crime. Strassheim v. Daily, 221 U.S. 280 (1911).

---

[3]"Section 2. PRIVILEGES AND IMMUNITIES OF CITIZENS; EXTRADITION OF FUGITIVES. . . .
"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[4]"§ 3182. FUGITIVES FROM STATE OR TERRITORY TO STATE, DISTRICT OR TERRITORY
"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear."

This appeal was submitted on the asserted ground that Thompson would be tried in California for embezzlement, that the requisite intent to appropriate to his own use the Williams' coins was not formed until he had left California, and that therefore there was no overt act coupled with criminal intent in California. The cases cited above which construe 18 U.S.C. 3182 and Article IV, § 2 of the United States Constitution require that the crime for which extradition is sought must have been committed in the demanding state before the accused fled from that state. Since it is apparent that Thompson did not flee California to escape prosecution for a crime committed there, he is not subject to extradition under 18 U.S.C. § 3182.

We turn to the question of whether the Uniform Criminal Extradition Act as enacted in Nevada, NRS 179.177–179.235, empowers the Nevada executive department with the authority to extradite Thompson independent of the federal law.[5] We hold that it does.

The first inquiry which must be answered under the Uniform Act is whether the accused had to be present in the demanding state at the time the crime was allegedly committed in that state. We hold that such presence is not required by the Uniform Act. NRS 179.189 empowers the Governor of Nevada to surrender upon demand of the executive authority of any other state any person properly charged with committing an act in this state, or in a third state, intentionally resulting in a crime in the demanding state, even though the accused was not in the demanding state at the time of the commission of the crime and has not fled therefrom. Since NRS 179.189 clearly exceeds the authority conferred by both the United States Constitution and its effectuating federal legislation, we are faced with the problem of whether it is valid. We hold that it is.

California enacted the provisions of the Uniform Act and upheld the extension of extradition authority beyond the federal law against constitutional challenge. In re Cooper, 349

---

[5]The Uniform Act was enacted in Nevada on April 17, 1967. Ch. 415 (1967) Nev. Stat. 1098. It became effective on July 1, 1967. NRS 218.530. It supersedes the old extradition statutes which adopted the federal standard for extradition.

P.2d 956 (Cal. 1960), cert. denied, 364 U.S. 294 (1960). The provision in question was impliedly approved by the United States Supreme Court in New York v. O'Neill, 359 U.S. 1, 11–12 (1959). The High Court stated that "[c]omity among States, an end particularly to be cherished when the object is enforcement of internal criminal laws, is not to be defeated by an *a priori* restrictive view of state power." As in New York v. O'Neill, supra, we find nothing in the United States Constitution which prohibits this exertion of state power, and we also find no forbidding limitation imposed by the Constitution of Nevada. Therefore we hold that NRS 179.189 is constitutionally valid.

Having decided that an accused need not be present in the demanding state at the time of the commission of the offense charged insofar as the power of extradition is concerned, we turn to the second and final inquiry which must be made. Both the federal law and NRS 179.183 require the presentation of certain documents by the demanding state which "substantially charge" the person demanded with having committed a crime under the law of that state. All of the required documents were presented in this case. The only issue we need decide is whether the February 27, 1968 complaint when taken together with the accompanying affidavit "substantially charged" a crime in California. The district court held that the complaint was too vague because it alleged a six-month period during which the putative crime occurred. An amended complaint was filed on May 17, 1968 limiting the time of the offense in response to the district court's objection, but we disregard it because it does not appear to have the required certification of the Governor of California.

The purpose of the documents required by NRS 179.183 is to establish probable cause for believing that an offense has been committed in the demanding state by the accused. Kirkland v. Preston, 385 F.2d 670 (D.C.Cir. 1967). Legal technicalities are disregarded. Here the authenticated complaint and accompanying affidavit were unquestionably sufficient to meet these requirements. Hogan v. O'Neill, 255 U.S. 52 (1921); Compton v. Alabama, 214 U.S. 1 (1909); Appleyard v. Massachusetts, 203 U.S. 222 (1906); In re Strauss, 197 U.S. 324 (1905); Munsey v. Clough, 196 U.S. 364 (1905); United States v. Flood, supra; Smith v. Idaho, supra; In re Cooper, supra. The affidavit and complaint substantially charge an offense under the general California theft statute, Cal. Pen. Code § 484, and in particular substantially charge

embezzlement as defined by Cal. Pen. Code §§ 503 and 506 (West 1955).[6] See also Cal. Pen. Code §§ 952, 955 and 959 (West 1956).[7] The absence from California of the accused at the time he formed the intent to embezzle does not prevent successful prosecution under the laws of California. Cal. Pen. Code § 778 (West 1956); Ex parte Hedley, 31 Cal. 108 (1866).[8]

Since it appears that Thompson should be extradited, the

---

[6]"§ 503. DEFINITION

" 'Embezzlement' defined. Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted.

"§ 506. PERSON CONTROLLING OR INTRUSTED WITH PROPERTY OF ANOTHER: MISAPPROPRIATIONS. . . .

"Every . . . agent . . . or person otherwise intrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust . . . is guilty of embezzlement . . . ."

[7]"§ 952. STATEMENT OF OFFENSE

"In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another.

"§ 955. PLEADING TIME OF OFFENSE

"The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense.

"§ 959. SUFFICIENCY OF ACCUSATORY PLEADING

"The accusatory pleading is sufficient if it can be understood therefrom:

. . .

"6. That the offense was committed at some time prior to the filing of the accusatory pleading."

[8]"§ 778. OFFENSES COMMENCED WITHOUT BUT CONSUMMATED WITHIN STATE

"When the commission of a public offense, commenced without the State, is consummated within its boundaries by a defendant, himself outside the State, through the intervention of an innocent or guilty agent or any other means proceeding directly from said defendant, he is liable to punishment therefor in this State in any competent court within the jurisdictional territory of which the offense is consummated."

writ of habeas corpus granted to him is quashed and he is remanded to custody.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.