577 P.2d 24

Larry L. JACOBSEN, Petitioner-Appellant,

v.

The STATE of Idaho, Defendant-Respondent.

No. 12425.

Supreme Court of Idaho.

March 30, 1978.

William J. Brauner, Caldwell, for petitioner-appellant.

Wayne L. Kidwell, Atty. Gen., Jean R. Uranga, Asst. Atty. Gen., Boise, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from an order quashing a writ of habeas corpus by which appellant seeks to oppose his extradition from Idaho to the State of Wyoming. We affirm.

Appellant is charged by a criminal complaint with the commission of a crime in Wyoming; i. e., of removing mortgaged personal property from the jurisdiction of the secured party without the latter's consent. Wyo.Stat. § 6–149 (Supp.1975). That complaint was sworn to by an officer of the bank, which was the secured party, before a commissioner of the Wyoming court. The State of Wyoming seeks to extradite appellant and pursuant to that process the Governor of Idaho issued a warrant and appellant was arrested thereunder. Appellant filed a petition for habeas corpus to which the sheriff of Canyon County made a return and thereafter the district court quashed the writ. From that order this appeal is taken.

Appellant seeks reversal of the order quashing the writ of habeas corpus on a number of grounds, including, inter alia: the failure of the State to controvert the allegations in the petition for the writ; the alleged insufficiency of the extradition warrant issued by the Governor of Idaho; the alleged insufficiency of the Wyoming affidavit alleging commission of the crime; inadequate certification by the Governor of Wyoming of the authenticity of the affidavit sworn before the commissioner in Wyoming; that the district court erred in ruling appellant was a fugitive from Wyoming; that appellant had not committed the crime of removing mortgaged property from the jurisdiction of the creditor; that appellant was being extradited in violation of Wyoming law since the extradition was not sought to prosecute a crime but to collect a private debt; that the affidavits of the prosecuting attorney in Fremont County, Wyoming, and the complaining witness falsely stated that the criminal proceedings

48

were not instituted to enforce a private debt; and that the judgment of the district court quashing the writ is not supported by sufficient evidence.

We note initially that habeas corpus, I.C. § 19–4201, is the proper vehicle by which extradition may be challenged. *Roberts v. Reilly,* 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885); *Norton v. State,* 93 Idaho 648, 470 P.2d 413 (1970), *cert. denied,* 401 U.S. 936, 91 S.Ct. 918, 28 L.Ed.2d 215 (1971); *In re Martz,* 83 Idaho 72, 357 P.2d 940 (1960). Here, appellant filed a petition for a writ of habeas corpus with the district court. A writ was issued to which the sheriff made a return. That return did not controvert any of the substantive claims in the petition for the writ. Appellant argues that the petition should be treated by this Court as a complaint and the return thereto as an answer, thereby requiring the application of I.R.C.P. 8(d), which provides that averments not denied are deemed admitted. Reliance on that rule is misplaced. The return was made by the sheriff to the writ issued by the court and was not a responsive pleading to the petition. *See* I.C. §§ 19–4208, 19–4212. A perusal of the statute makes clear that the return is not intended to be a pleading responsive to the petition and further indicates that the burden of putting issues in controversy clearly lies upon the person brought before the court. The function of the petition is to secure the issuance of the writ and once that writ has been issued the petition has served its office. *Jackson v. State,* 87 Idaho 267, 392 P.2d 695 (1964); *State v. Olsen,* 53 Idaho 546, 26 P.2d 127, 128 (1933).

It is also argued that the failure of the sheriff's return to annex a copy of the documents under which custody of the appellant was held makes that return defective. We agree with the respondent that the omission, although erroneous, was harmless and was not objected to and that the originals of those documents were submitted to the district judge at the time of hearing. That was also the time set for the return to writ and if petitioner and his counsel deemed additional time was necessary to examine said documents or had objections to setting the time for the return and the hearing simultaneously, objection should have been made at that time with request for additional time. Since none was made, we deem the same harmless as none of appellant's substantial rights were impaired. *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421 (1974).

Appellant contends that the warrant of the Governor for extradition was defective for noncompliance with I.C. § 19–4505. Appellant claims he is not a fugitive and has not been so shown. The warrant of the Idaho Governor, however, itself is prima facie evidence of that status. *Smith v. State,* 89 Idaho 70, 403 P.2d 221 (1965). *Accord, Koprivich v. Warden,* 234 Md. 465, 200 A.2d 49 (1964). It is presumed that the Governor performed his duty to examine the demanding documents to ascertain if they indicated that the accused was in the demanding state at the time of the commission of the alleged crime and that he thereafter fled from that state and is found in this state. *Norton v. State, supra.* The documents delivered by the Governor of Wyoming sufficiently show that the appellant was in Wyoming at the time of the alleged crime, that he thereafter left Wyoming and has been and now is in Idaho. Such is sufficient to establish fugitive status under the extradition clause of the federal constitution, article IV, § 2, clause 2, and 18 U.S.C. § 3182 (1970). *Roberts v. Reilly, supra. See also* I.C. § 19–4505; *Norton v. State, supra.*

Appellant argues, however, that he is not a fugitive because he did not commit a crime. He contends he had permission from the creditor to remove the mortgaged personal property from Fremont County, Wyoming. The asylum state, however, is not authorized to inquire into the guilt or innocence of the accused as to the charged crime. I.C. § 19–4520. The argument of the appellant would, if proved, tend to establish his innocence but that is a question for the Wyoming courts, not those of Idaho. *See Koprivich v. Warden, supra.*

"The traditional 'narrow scope' extradition habeas corpus · proceeding * * * countenances four avenues of attack upon the validity of custody in the asylum state pending extradition: (1) that the extradition papers are not in order, or are without proper authentication by the demanding state's executive authority; (2) that the charge, whether by indictment or affidavit, is inadequate to support extradition, or is insubstantial; (3) that the petitioner is not the person named in the extradition papers; (4) that the petitioner is not a fugitive from the demanding state's justice because he was not within the demanding state at the time of the alleged offense."

Note, *Extradition Habeas Corpus,* 74 Yale L.J. 78, 91 (1964) (footnotes omitted). As contrasted with the above, the "broad · scope" inquiry considers whether extradition would result in subjecting the fugitive to cruel and unusual punishment in the demanding state. Such is not in issue here. Neither the traditional "narrow scope" inquiry or any other entitles appellant to oppose extradition on the ground that he is innocent of the charged crime in the demanding state.

█ Appellant further opposes extradition on the ground that the pending prosecution in Wyoming is brought to enforce a private claim. We note that Wyoming law forbids the use of criminal extradition process to enforce private claims. Wyo.Stat. § 7–49 (Supp.1975). We have previously determined that courts of this state will not inquire into the motives of those prosecuting the case in the demanding state. *Norton v. State, supra.* Although we are asked here to overrule *Norton,* we decline the invitation and continue to believe it inadvisable for the asylum state to inquire into the motives of persons who are not before the courts of the asylum state. If the sworn affidavits of persons in Wyoming were made falsely, that matter is best left to the Wyoming court.

█ Appellant next contends that the affidavit attached to the Wyoming extradition documents is inadequate in that it does not charge him with the commission of every element essential to the crime. However, we hold that all that is necessary is that the affidavit *substantially charge* him with the commission of a crime. I.C. § 19–4503. *See Roberts v. Reilly, supra.* Appellant's argument in effect would require the affidavit to establish probable cause. Such argument is thought to follow from *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). *Gerstein* was not an extradition case. It held, however, that a judicial determination of probable cause must be had within a reasonable time after a person is arrested on a prosecutor's information. We were cited no case of the U.S. Supreme Court holding that the fourth amendment principles requiring a determination of probable cause by a neutral detached judicial officer as a condition to pretrial detention require that determination to be made in the asylum state. *See* Note, *Interstate Rendition in the Fourth Amendment,* 24 Rutgers L.Rev. 551 (1970). *See also Price v. Pitchess,* 556 F.2d 926 (9th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977) (wherein dictum suggests the inapplicability of the Bill of Rights as a whole to extradition matters).

We note a lack of unanimity among those jurisdictions which have considered the question of whether there must be a probable cause determination prior to extradition either in the demanding or asylum state. *Kirkland v. Preston,* 128 U.S.App.D.C. 148, 385 F.2d 670 (1967), was the first case to so hold and has been followed by several other cases. *See Ierardi v. Gunter,* 528 F.2d 929, 930–31 (1st Cir. 1976); *United States ex rel. Grano v. Anderson,* 446 F.2d 272 (3d Cir. 1971); *Wellington v. South Dakota,* 413 F.Supp. 151 (D.S.D.1976); *United States ex rel. Mayberry v. Yeager,* 321 F.Supp. 199 (D.N.J.1971); *Pippin v. Leach,* 188 Colo. 385, 534 P.2d 1193 (1975); *People v. Doran,* 401 Mich. 235, 258 N.W.2d 406 (1977); · *Sheriff v. Thompson,* 85 Nev. 211, 452 P.2d 911 (1969); *Smith v. Helgemoe,* 369 A.2d 218 (N.H.1977). As to those jurisdictions holding that the asylum state is not entitled to make a probable cause inquiry in extradi-

tion matters, *see Price v. Pitchess, supra; Woods v. Cronvich,* 396 F.2d 142 (5th Cir. 1968); *United States ex rel. Vitiello v. Flood,* 374 F.2d 554 (2d Cir. 1967); *Garrison v. Smith,* 413 F.Supp. 747 (N.D.Miss.1976); *People ex rel. Kubala v. Woods,* 52 Ill.2d 48, 284 N.E.2d 286 (1972); *Bailey v. Cox,* 260 Ind. 448, 296 N.E.2d 422 (1973); *Taylor v. Garrison,* 329 So.2d 506 (Miss.1976). *See also Smith v. State,* 89 Idaho 70, 403 P.2d 221 (1965).

▮ While we recognize that substantial disruption of the accused's affairs results not only from confinement but also from transportation to a potentially distant jurisdiction, nevertheless, other considerations lead us to reject the assertion that the asylum state must make a probable cause inquiry in cases where the demanding documents substantially charge the commission of a crime. The extradition clause of the federal constitution was designed to facilitate expeditious interstate renditions of accused persons and it contemplates "the prompt return of a fugitive from justice as soon as the state from which he fled demands him." *Sweeney v. Woodall,* 344 U.S. 86, 90, 73 S.Ct. 139, 141, 97 L.Ed. 114 (1952). *Accord, People ex rel. Kubala v. Woods, supra.* We deem it impractical to require more than an examination of the demanding papers for the formal requirements of 18 U.S.C. § 3182 and the Uniform Act which exists in most states, including Wyoming and Idaho. More than that would require either appearance by the authorities of other states before the courts of the asylum state or resort to obviously inadequate methods of telephone or written communication between those authorities and our courts to clarify, expand or explain any asserted ambiguities in the documents, or even perhaps the statutes of the demanding state with all their subtleties and nuances.

▮ Even assuming arguendo that probable cause is required, the sworn affidavits and the criminal complaint executed in Wyoming and which accompany the demanding documents establish probable cause to believe that the appellant removed mortgaged personal property from Fremont County without the consent of the secured party in violation of Wyoming law.

▮ Following oral hearing, the parties were required to submit supplemental briefs as to whether I.R.C.P. 52(a) requires written findings and conclusions in habeas corpus proceedings. I.R.C.P. 52(a) indeed requires findings and conclusions in actions tried without a jury. However, prior to comparatively recent amendment, I.R.C.P. 81(a) directed that the Rules of Civil Procedure were inapplicable to "special statutory proceedings," which would exclude habeas corpus proceedings. I.C. § 19–4201 *et seq.* I.R.C.P. 81(a), as amended, now makes the Rules of Civil Procedure applicable in all civil actions with the exception of small claims. Habeas corpus is traditionally recognized as a civil proceeding. *Ex parte Tong,* 108 U.S. 556, 2 S.Ct. 871, 27 L.Ed. 826 (1883).

Written findings and conclusions facilitate appellate review. *Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977). A substantial portion of all appellate work results from the review of habeas corpus appeals. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 260 n. 14, 93 S.Ct. 2041, 36 L.Ed.2d 854 (Powell, J., concurring) (1973); *The Supreme Court Term,* 91 Harv.L.Rev. 1, 300 (1977) (Table III); 1976 Annual Report, Idaho Courts 30. We, therefore, hold that findings and conclusions should be prepared in habeas cases. Our view is in accord with the procedure that is utilized in the federal system under an analogous but not identical rule. 5A Moore's Federal Practice, § 52.-03[3], at 2671 n. 15 (2d ed. 1977); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2573, at 685–86 nn. 32–36 (1971). We do not hold that all rules of civil procedure are fully applicable in habeas proceedings. *Browder v. Director, Department of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978). One example, arguably, would be that the liberal rules of discovery, normally applicable in civil cases, might be inappropriate in habeas cases. *See generally Developments in the Law—Federal Habeas Corpus,* 83 Harv.L. Rev. 1038 (1970).

We find no necessity for remand in the instant case since the appellant's assignments of error do not concern themselves with material factual issues or questions, but rather with the applicable law.

We have considered appellant's other assignments of error or issues upon appeal and deem them to be without merit. The district court's order quashing the writ of habeas corpus is affirmed.

McFADDEN and DONALDSON, JJ., concur in the result.

BAKES, Justice, concurring specially:

██ I concur in the result reached by the majority, but only because, as the majority opinion points out, the "sworn affidavits and the criminal complaint executed in Wyoming and which accompany the demanding documents establish probable cause to believe that the appellant removed mortgaged property from Fremont County without the consent of the secured party in violation of Wyoming law." Without such a showing of probable cause I am of the opinion that any extended restraint of liberty following arrest, whether in an extradition proceeding or otherwise, would be illegal. *Struve v. Wilcox*, 99 Idaho 205, 579 P.2d 1188 (1978); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

BISTLINE, Justice, concurring and dissenting.

██ The writ is properly quashed because the record which we review sufficiently establishes probable cause for the arrest of the petitioner and his detention and surrender to Wyoming officials. To that extent, I concur, and since I believe the affidavit of underlying facts to be somewhat of a model, it is being set forth in a note.[1]

Where the opinion of the Court declares that extradition proceedings are exempt

---

1. John R. Benesch swore to the criminal complaint which charged Jacobsen in the language of the Wyoming statute. On the same date, October 1, 1975, he swore before the magistrate to an affidavit of underlying facts, following which the warrant issued. The affidavit specifically recites that the complaining witness relies upon the following facts to establish probable cause for believing the criminal violation alleged in the complaint was committed, and that Jacobsen committed the same, and proceeds to relate:

    1. That I am the President of the American National Bank of Riverton, Riverton, Wyoming.

    2. That on or about the 13th day of January, 1975, the bank took as security for a loan to Larry Jacobsen a security agreement listing one 1974 Plymouth Trail Duster, V.I.N. AAOAT 4X115168.

    3. That on or about the 22nd day of August, 1975, the American National Bank of Riverton took as security for a loan to Larry Jacobsen, one Renaissance LaPaz Billiard Table, Serial No. 93179, as set out on a security agreement signed by Larry Jacobsen that date.

    4. That the debtor Larry L. Jacobsen was in default upon the note signed at the bank and, on or about August 28, 1975, I talked on the telephone to Larry Jacobsen long distance and told him that he was not to remove the property which the bank held as security from the Riverton vicinity.

    5. That the 1974 Plymouth and the billiard table were located at the Frank Hill residence on Riverton Road, which residence was leased by Larry Jacobson.

    6. Frank Hill has stated to me that Larry Jacobsen entered his house on Riverview Road on or about September 28, 1975 and removed one Quality Billiard Table and also removed one 1974 Plymouth Trail Duster along with other property held by the bank under security agreements signed by Larry Jacobsen.

    7. That Ed Schmidt, Yellowstone Oil, Inc., West Main, Riverton, Wyoming, has stated to me that late the afternoon of September 27, 1975, Larry Jacobsen rented two U-Haul trailers from the station indicating destination for the U-Hauls as Nampa, Idaho.

    8. That Larry Jacobson's parents live at Nampa, Idaho.

    9. That other mortgaged property held as security by the American National Bank of Riverton was taken from the Hill residence by Larry Jacobsen in addition to the billiard table and vehicle, including but not limited to, one 1967 Pontiac Grand Prix, Frigidare washer and dryer, a Magnavox stereo and Magnavox TV.

    10. That at no time did the American National Bank of Riverton give consent to Larry Jacobsen to remove the mortgaged property from Fremont County and had, in fact, given a specific order to Mr. Jacobsen not to remove such property from the residence on Riverview Road in Fremont County.

from probable cause requirements, I am in strong disagreement.

In the first place, such a declaration is mere dictum. In the present case, the papers from the demanding state *did* show sufficient underlying facts to demonstrate probable cause to arrest, detain and extradite Mr. Jacobsen. The majority expressly so holds. The question of whether extradition proceedings are exempt from probable cause requirements would have to be faced only if the Court were to hold that probable cause was lacking. It is a fundamental principle of constitutional adjudication that a reviewing court will not pass on questions of constitutionality unless it is absolutely necessary to do so in order to determine the merits of the case. *Curtis v. Child,* 95 Idaho 63, 501 P.2d 1374 (1972).

Secondly, I question the judicial wisdom in making such a pronouncement in the face of overwhelming authority which points in the other direction. When the issue of probable cause in the extradition context arose at oral argument, the Court requested further briefing on the subject. The office of the Attorney General, in a thorough supplemental brief, has given us the benefit of its research on the matter. Therein the State directs our attention to *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Kirkland v. Preston,* 128 U.S.App.D.C. 148, 385 F.2d 670 (1967); *Ierardi v. Gunter,* 528 F.2d 929 (1st Cir. 1976); *Montague v. Smedley,* 557 P.2d 774 (Alaska 1976); *Allen v. Cronin,* 543 P.2d 707 (Colo.1976),[2] which stand for the following proposition which I quote verbatim from the State's supplemental brief:

2. The casual reader is liable to be misled by the majority's suggestion that the authorities are split on the question of "whether there must be a probable cause determination prior to extradition either in the demanding or asylum state." Especially startling is the majority's apparent approval of a case allegedly suggesting "the inapplicability of the Bill of Rights as a whole to extradition matters." Without dissecting in detail the cases relied upon by the majority, I would simply point out that most of them pre-date *Gerstein*; the remainder stand not for the proposition that the accused may be

## A JUDICIAL DETERMINATION OF PROBABLE CAUSE MUST PRECEDE ANY SIGNIFICANT PRETRIAL RESTRAINT OF LIBERTY, INCLUDING RESTRAINT FOR PURPOSES OF INTERSTATE EXTRADITION.

*Gerstein* speaks the law for all fifty states. Where a majority of the Court unnecessarily insist on holding that probable cause need not be established in extradition proceedings in this State, I vote with Justice Bakes.

Were the Court's opinion limited to the statement that a probable cause hearing is not required in the asylum state "in cases where the demanding documents substantially charge the commission of a crime," and were there a correct elucidation as to the meaning of "substantially charging" the commission of a crime, then there would be a single opinion in this case. At oral argument counsel for the State explained that "substantially charge" means that the charges must be supported by a probable cause determination made by a magistrate. If it is understood that "substantially charge" carries with it the accomplished fact of a probable cause hearing in the demanding state, then ordinarily a probable cause hearing need not be had in the asylum state. In *Ierardi* the court considered the issue of whether there must be a judicial determination of probable cause prior to interstate extradition. In reaching its decision, the court relied on *Gerstein* for the proposition that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." *Gerstein v. Pugh,* 420 U.S. at 126, 95 S.Ct. at 869. The *Ierardi* court then said:

extradited without a probable cause determination, but rather for the proposition that the accused may not use such a probable cause hearing to argue what will ultimately be his substantive defenses in the criminal prosecution itself. It is in this sense only that the express and implied guarantees of the Bill of Rights—such as the right to a speedy trial, freedom from double jeopardy, inadmissibility of evidence absent *Miranda* warnings, etc.— can be said to be inapplicable in the extradition context.

We agree with the district court that *Gerstein* requires a judicial determination of probable cause as prerequisite of interstate extradition. After *Gerstein* such a determination must precede 'any significant pretrial restraint of liberty,' 420 U.S. at 125, 95 S.Ct. at 868, and we think interstate extradition necessarily involves significant restraint. 528 F.2d at 930.

The court then concluded:

Respondents seem to assume that if a judicial determination of probable cause must precede extradition, it must be provided by the courts of the asylum state, where the fugitive is held. This is not so. *Gerstein* explicitly rejected the need for adversarial procedures; it required only the neutral and detached judgment of a judicial officer or tribunal, and contemplated that this could be provided before as well as shortly after arrest. *Thus nothing in Gerstein prevents the demanding state from providing the requisite pre-rendition determination of probable cause.* (Emphasis added.) *Id.* at 930–931.

As a result, the requisite pre-rendition determination of probable cause may be made by either the demanding state or the asylum state.

In *Struve v. Wilcox,* No. 12307, 99 Idaho 205, 579 P.2d 1188 (filed February 3, 1978), probable cause was discussed in connection with Rule 4 of the Rules of Criminal Practice and Procedure. Therein we pointed out that since territorial days an arrest warrant could only issue if the magistrate found in the deposition (affidavits) *facts tending to establish the commission of the offense and the guilt of the defendant.* In this jurisdiction, it has always been necessary to establish probable cause as a condition precedent to the issuance of a warrant to arrest and detain a person or seize his property. In *State v. Arregui,* 44 Idaho 43, 254 P. 788 (1927), a search warrant case, this Court held that the affidavit must set forth and disclose some personal knowledge of the underlying facts; the conclusions to be drawn therefrom are for the magistrate to draw. The underlying facts must be "sufficient upon which to find probable cause for the issuance of the warrant. . . ." *State v. Arregui, id.* at 63, 254 P. at 794. In the promulgation of Rule 4, I.C.R., "sufficient evidence" to justify a finding of probable cause became "substantial evidence." Reasonably, then, it follows that a person is "substantially charged" with the commission of a crime when the affidavit or affidavits of underlying facts disclose substantial or sufficient evidence upon which to base a finding of probable cause. Mere conclusory allegations in a complaint, parroting the language of the particular statute involved, will not suffice. A reading of the majority opinion suggests to my mind that in the eyes of the majority "substantially charge" has no connection with a finding of probable cause, conveying the message only that the charge of the criminal complaint be complete enough to withstand a demurrer or motion to dismiss, whichever might be interposed in a particular jurisdiction.

The federal statute which was enacted to implement the extradition clause of the United States Constitution, 18 U.S.C.A. § 3182, requires that where there is not an indictment found, the demanding state must produce "an affidavit made before a magistrate." The very nature of an affidavit is to "set forth the facts stated by the prosecutor and his witnesses, tending to establish the commission of the offense and the guilt of the defendant." I.C. § 19–505. Surely Congress, in enacting 18 U.S.C.A. § 3182, must also have intended to require that the affidavit, or affidavits, made before a magistrate establish probable cause to the magistrate's satisfaction. The only alternative is the production of an indictment found—which all will concede can only result from a grand jury hearing where evidence has been received showing the commission of a crime and probable cause to believe the person charged guilty thereof.

If such underlying probable cause were not the requirement of 18 U.S.C.A. § 3182, the federal statute would ask for no more than a complaint and a warrant. But an affidavit made before a magistrate *is* re-

54

quired. If it be for any purpose, then it is for the purpose of establishing probable cause, and thereby a person is substantially charged. *U. S. ex rel. McCline v. Meyering,* 75 F.2d 716, 718 (7th Cir. 1934); *State ex rel. Foster v. Uttech,* 31 Wis.2d 664, 143 N.W.2d 500, 503 (1966).

*Videan v. State,* 68 Idaho 269, 194 P.2d 615 (1948), declared the judicial function in extradition proceedings:

> The major questions for consideration relate to the authority of the Governor of the state of Idaho to issue a warrant of extradition based upon the contents of the requisition proceedings for the surrender of appellant. If those proceedings do not conform to the statutory requirements of this jurisdiction, or, are void for other reasons, then the action of the executive authority of this state was unauthorized in issuing a warrant for extradition to the demanding state. 68 Idaho at 271, 194 P.2d at 617.

Habeas corpus affords an opportunity for judicial review of the issuance of a governor's warrant, i. e., to determine if the documents upon which the governor acted conformed to the statutory law of this jurisdiction. Our statute, I.C. § 19–4503, requires that, whether the demanding state transmits a copy of an indictment found, an information supported by affidavit, or an affidavit made before a magistrate, the document "must substantially charge" the person demanded with having committed a crime. And so the inquiry comes full circle back to the statement of counsel for the State at oral argument: "substantially charge" means that there must have been in the demanding state, and if not there, then here, an affidavit of underlying acts from which a *magistrate* has properly drawn the conclusion that probable cause has been established.