Benjamin Altman, J.
The defendant, an alleged probation violator from North Carolina, moves, pursuant to CPL 570.36 and 570.40, for a dismissal of the fugitive warrant before the court. The People move pursuant to CPL 410.80 to have the defendant delivered to the custody of the North Carolina authorities.
On September 6, 1973, the defendant had executed a waiver of extradition to the State of North Carolina. (In examining the waiver, it seems to this court that the executed waiver was for violations of probation in futuro.)
No New York Governor’s mandate honoring North Carolina’s request has ever been issued.
The defendant was arrested on or about August 10, 1976, and was remanded for appearance in the Criminal Court. On August 11, 1976, an Acting Supreme Court Justice paroled the defendant. Subsequently, the matter was on for August 20, October 5, November 5, 1976, and January 20, 1977. The defendant is still on parole and has made all appearances.
The time of the arrest and arraignment as a fugitive starts the 90-day period in which the Governor’s warrant must be issued (CPL 570.36, 570.40).
The defendant contends that the 90-day time limit contained in the CPL has long since expired. The defendant thus alleges that this court no longer has jurisdiction over the matter and that the defendant should be dismissed.
While the defendant is on parole and is not incarcerated as such, he alleges that the issue of the fugitive warrant "holds” him, making him subject to the mandate of the court. His freedom is thus restricted, i.e., he is in effect "committed.” (It is noted at this juncture that the defendant has not moved by writ of habeas corpus for his release.)
Finally, the defendant contends that he was a teenager at the time he executed the waiver of extradition. At the very *271 least there should be a hearing as to whether the waiver was knowingly and voluntarily executed.
The prosecution argues that, notwithstanding the absence of a New York State Governor’s mandate before this court, the 1973 waiver of extradition is effective, and, pursuant to CPL 410.80 the defendant should be presented to the North Carolina authorities.
The statutes under consideration are the following:
"§ 570.36 Commitment to await requisition; bail. If from the examination before the local criminal court it appears that the person held is the person charged with having committed the crime alleged, and, except in cases arising under section 570.14 or 570.16, that he has fled from justice, the local criminal court must, by a warrant reciting the accusation, commit him to the county jail for such time not exceeding thirty days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused gives bail as provided in the next section, or until he shall be legally discharged.” (Emphasis added.)
"§ 570.40 Extension of time of commitment; adjournment. If the accused is not arrested under warrant of the governor by the expiration of the time speciBed in the warrant, bond or undertaking, a local criminal court may discharge him or may recommit him for a further period of sixty days, or for further periods not to exceed in the aggregate sixty days, or a supreme court justice or county judge may again take bail for his appearance and surrender, as provided in section 570.38 but within a period not to exceed sixty days after the date of such new bond or undertaking.” (Emphasis added.)
"§ 410.80* Transfer of supervision of probationers.
*272 "1. Authority to transfer supervision. In any case where a sentence of probation is pronounced, if the defendant resides or desires to reside in a place other than one within the jurisdiction of the probation department that serves the sentencing court, such court may designate any other probation department within the state to perform the duties of probation supervision and may transfer supervision of the defendant thereto. Any such designation must be in accordance with rules adopted by the director of the state division of probation.
"2. Transfer of powers. Where supervision of a probationer is transferred pursuant to subdivision one, the probation department and probation officers to which the duties of probation supervision have been transferred have the same powers and duties as otherwise would have been possessed by those serving the sentencing court. The court served by the probation department to which supervision is transferred has the powers specified in sections 410.20, 410.30, 410.40, subdivision three of section 410.50, and section 410.60. If it appears that the defendant has violated a condition of his sentence, such court also has the power to:
"(a) Commit the defendant to the custody of the sheriff, and direct such official to bring the defendant promptly before the court that imposed the sentence; or
"(b) Conduct a hearing on the violation pursuant to subdivisions one through four of section 410.70 and make findings of fact. In such case, the court may then either (i) continue or modify the sentence, or (ii) commit the defendant as provided in paragraph (a) and send a certified copy of the transcript of the hearings and its findings to the court that imposed the sentence.”
We can now direct our attention to the defendant’s status and his argument that he is being "held.”
*273 Webster’s Seventh New Collegiate Dictionary defines "commitment” as a "consignment to a penal or mental institution.”
The CPL 570.36 and 570.40 reference is to "commitment,” and in this court’s view counsel misinterprets the language in the statute. The word "discharge” in the statutes clearly means to release from commitment or confinement.
The apprehension of a fugitive for the purpose of extradition is indeed a criminal arrest (see CPL arts 120 and 570; Kirkland v Preston, 385 F2d 670). The arrest does deprive the fugitive of his liberty for the purpose of insuring his presence at a criminal trial.
The defendant in the present case is on parole. He has not been "incarcerated” or "committed.” The defendant’s status with the presence of the outstanding fugitive warrant and the parole status will hinder the defendant’s movements and prevent him from being completely free.
The defendant is "in custody.” The word "custody” as defined by Black’s Law Dictionary states: "The term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking * * * possession” (emphasis added).
This court suggests that the defendant is "in custody,” and that status as applied here represents the legal power to imprison. This is quite different from actual imprisonment or confinement, neither of which existed here.
The logic for the 90-day time limitation as to "committing” a defendant regarding extradition is twofold. The first is that 90 days is a reasonable period for a "Governor’s warrant” to be forthcoming. Second, such a time limit places a reasonable time for a defendant conñned to jail. During this period, the defendant is at an obvious and distinct disadvantage in that he can only resist his incarceration and the entire extradition procedure from a very poor tactical standpoint — the jail cell. Confinement greatly impairs an individual’s ability to prepare and assist in his defense of the charges.
The 90-day limit keeps the time in which a defendant can be in this vulnerable position to set limits.
On the question of jurisdiction, case law is sparse. However, in People ex rel. Green v Nenna (53 Misc 2d 525, affd 24 AD2d 936, affd 17 NY2d 815) a parallel issue was raised by counsel, i.e., that the court had lost jurisdiction of the detainee because the 90-day time limit had long since expired. In the Green *274 case the relator (defendant) was actually incarcerated, and the court, after over 135 days of imprisonment, had before it the Governor’s mandate to turn over the relator to the requesting State. However, on the question of retaining jurisdiction the principle remains the same.
Mr. Justice Davidson in Green (53 Misc 2d 525, 526-527, supra) stated:
"Relator urges that by reason of his detention beyond 90 days set forth in the statute, supra, the court has lost jurisdiction of his person. There is no authority for this contention. While it is true that any time beyond the 90 days aforementioned and prior to the Governor’s mandate, the relator could have demanded his release. Nevertheless, at any time, upon receipt of the mandate, it is the court’s obligation to turn him over to the agents of the demanding State.
"The relator is presently before the court. The court has jurisdiction of his person and a mandate from the State of California which is recognized and acceded to by the Governor of the State of New York. While the statutes afore-mentioned limit the time for which he may be held awaiting the instant procedure, the expiration of the time limitation is not a bar to extradition.”
The case of People ex rel. Keesee v Warden (51 AD2d 756) clarifies the defendant’s status should he be released.
The defendant had brought a habeas corpus proceeding to vacate a Governor’s warrant for extradition to the State of Florida on the ground that it was not issued within 90 days after he was originally arrested and confined.
The defendant had been previously detained for extradition on the same charge (failure to abide by the terms of a sentence of probation stemming from a conviction in Florida for grand larceny). The warrant was dismissed because the Governor failed to issue a warrant within 90 days of the petitioner’s detention.
The petitioner’s contention was that his detention was illegal because he was not arrested pursuant to a Governor’s warrant within the aggregate 90 days of his original arrest. The Appellate Division, Second Department, stated (p 757): "[EJven though the petitioner had been previously released, he remains a fugitive from justice within the meaning of the Federal Constitution and the statutes permitting extradition; he is not immune from extradition”.
*275 Thus in the Keesee case, the petitioner was detained twice on the same offense; the 90-day limit had expired; yet his status was still that of a fugitive and he was not immune from extradition.
In People ex rel. Spence v Sheriff (44 AD2d 867) the petitioner was sentenced to two days in the county jail for hitchhiking. This occurred on March 26, 1973. While confined, a warrant charging him with being a fugitive from Virginia was lodged. On May 7, 1973 he was charged with being a fugitive. On May 30, 1973, certain papers from Virginia relating to the petitioner’s extradition were received along with a Governor’s warrant from the Governor of New York.
The Appellate Division stated that (p 868): "Even conceding that the petitioner was held illegally after his initial 30 days of confinement (cf. CPL 570.36), in that his time of commitment was not properly extended (cf. CPL 570.40), immunity from extradition is not a remedy for such detention and the subsequent extradition proceeding was not thereby vitiated [citation omitted]”.
The above cases are cited to show the inherent vitality in the fugitive status in that it can withstand transgressions of the 30- and 90-day rules set forth in CPL 570.36 and 570.40. Also, it is noted that the above cases involve petitioners "committed” or incarcerated.
In view of the foregoing, this court sees no basis for dismissing the fugitive warrant presently outstanding against the defendant or for granting the prosecutor’s motion. Since the issue has been joined on the validity of the 1973 waiver of extradition, this court will seek to place this matter on the calendar of the Supreme Court — Criminal Branch.

 It must be pointed out that the prosecutor’s reliance on CPL 410.80 may be misplaced. If we look at the Practice Commentary by Peter Preiser, following CPL 410.80 (McKinney’s Cons Laws of NY, Book 11 A, CPL 418.80), this court notes the following: "With the ever increasing tendency of persons to travel and modern transportation methods, the possibility of a person being arrested for and being convicted of a crime in a county other than his county of residence and the possibility of a person moving to another county to take advantage of an employment opportunity makes it essential that the State have an effective, workable procedure for transferring supervision of probationers between counties. This section sets forth such a procedure. Subdivision 2 gives the court in the receiving county the authority to cope with violations and subdivision 4 — by making the costs incurred by a receiving county in returning a probation violator to the sending county a charge on the *272 sending county — should go far towards removing the reluctance of counties to accept probationers from other counties.”(Emphasis added.)
The legislative memorandum accompanying the 1972 amendment to CPL 410.80 (subd 2) (L 1972, ch 545, § 1) stated (McKinney’s 1972 Session Laws, p 3318): "Statutory authority for transfer of probations from one county to another within the State has existed for many years but the specific procedure has never been spelled out.” (Emphasis added.)
Using the commentary and the legislative memorandum as an instructive guide, it appears that CPL 410.80 serves as setting forth guidelines regarding costs of probationers going from one county to another within New York State (see Matter of Florentino, 75 Mise 2d 670).