579 P.2d 1188

**Harry T. STRUVE, Petitioner-Appellant,**

v.

**Robert WILCOX, Sheriff, Bonner County, Defendant-Respondent.**

No. 12307.

Supreme Court of Idaho.

Feb. 3, 1978.

Rehearing Denied May 30, 1978.

Nick M. Lamanna of Cooke & Lamanna, Priest River, for petitioner-appellant.

No appearance for respondent.

BISTLINE, Justice.

The issue presented on this habeas corpus review is the validity of petitioner's prere-

quisition detention to await the issuance of an Idaho's Governor's arrest warrant on the requisition of the Governor of South Dakota. For failure to comply with the Idaho statute requiring a judicial hearing at which it must appear that petitioner is the person charged with having committed the alleged South Dakota crimes, and that he probably committed the same, we reverse the district court with instructions to order the release of the petitioner.

Petitioner was initially arrested in Sandpoint, Idaho, on Idaho felony check charges.[1] A routine inquiry through the National Crime Information Center computer led to the information that South Dakota had three outstanding felony warrants against a Harry T. Struve, which were based on complaints of passing one check for $10.00 and two for $5.00, all drawn on a nonexistent bank account.

On petitioner's arraignment on the Idaho check charges, he was ordered to jail awaiting a preliminary hearing and bond was set at $1,500.00. The court then asked for and received unsworn police testimony about the South Dakota charges, in view of which the court raised petitioner's bond from $1,500.00 to $5,000.00.

Two weeks later when petitioner was taken to his preliminary hearing on the Idaho felony check charges, he was served by a Sandpoint policeman with an Idaho fugitive warrant, issued on an Idaho complaint. The scheduled preliminary was temporarily delayed in deference to an immediate court arraignment on the fugitive complaint. Petitioner's detention in jail is predicated upon the prerequisition warrant which issued following the arraignment.[2] Omitting the portions where the magistrate read from the Idaho fugitive complaint, the entire proceeding[3] was as follows:

THE COURT: . . . .

This is the time that has been set for the hearing in the matter of *STATE OF IDAHO, Plaintiff, vs. HARRY T. STRUVE, Defendant.* Case No. 16091–F/W and *STATE OF IDAHO, Plaintiff, vs. HARRY T. STRUVE, Defendant.* Case No. 15967–IM.

The first matter we have to take up today is 16091.

Are you Mr. Harry T. Struve?

MR. STRUVE: Yes sir.

THE COURT: Mr. Struve, in the complaint that has been filed with the Court in this case, you are charged with being a fugitive from justice in the State of South Dakota, in violation of Idaho Code 19–4513. At this time, I will read the complaint to you.

"Personally appeared before me this Fourteenth (14th) day of May, 1976, Charles Schoonover, in and for the County of Bonner, State of Idaho, being first duly sworn, complains and says: [Here the court read to defendant as Count I, Count II and Count III, the three South Dakota complaints, and continued.]"

This complaint was subscribed and sworn to on May 14, 1976, by Charles Schoonover before Judge Swanstrom.

At that time, Judge Swanstrom issued a warrant of arrest which was served this Nineteenth (19th) day of May and return made by Charles Schoonover. And attached to the complaint are the Three (3) complaints and warrants from South Dakota.

Now, without admitting or denying the allegations of this complaint, you understand what the charges are?

---

1. Struve vigorously maintained in the district court, and here, that the Idaho check charges were a pretext, and thus tainted all that flowed from an allegedly illegal detention thereon. The trial court disagreed. Because Struve's challenged detention was not on the Idaho charges, and because we find his prerequisition detention unlawful for reasons independent of this taint theory, we mention proceedings on those Idaho check charges only where they intertwine with the proceedings in Idaho on the fugitive complaint.

2. After petitioner was ordered to jail on the prerequisition warrant, the court turned to the matter of the preliminary hearing on the Idaho check charges. These charges were dismissed on motion of the prosecution.

3. Case No. 16091–F/W is the Idaho fugitive complaint. Case No. 15967–IM is the earlier complaint on Idaho check charges.

MR. STRUVE: Yes, I have a copy of the identical phrase that you read sir.

THE COURT: Now, I am going to commit you to jail for a period of time of up to Thirty (30) days to enable your arrest on a requisition from the Governor of South Dakota. So, the State of Idaho will have Thirty (30) days in which to arrest you on this requisition.

Now, in addition, at the time of this requisition, you have a right to counsel. You have a right to confront witnesses before returning to South Dakota and you have a right to produce evidence in your own behalf. Or, rather than awaiting the requisition, you have a right to waive extradition. Now, do you desire an attorney to represent you?

MR. STRUVE: Well, I was under the understanding that I was up here on this case involved here in town.

THE COURT: Well, you are here on Two (2) cases. Now, we are talking about the extradition matter. Do you desire an attorney to represent you?

MR. STRUVE: Yes sir!

THE COURT: Do you have any money to hire an attorney to represent you? You do not?

MR. STRUVE: No sir.

THE COURT: Very well. Would you rise and be sworn please.

HARRY T. STRUVE, being first duly sworn to testify the truth, the whole truth and nothing but the truth, was examined and testified as follows:

EXAMINATION BY THE COURT FOR COURT–APPOINTED COUNSEL: [The examination disclosed that Struve was so entitled, which is not here in question.]

THE COURT: Have you signed it where it says, "Application" ?

MR. STRUVE, after reviewing your financial statement, I am going to appoint Mr. Nick Lamanna, the Public Defender, for Bonner County, to represent you. He will be notified and contact you. In the event you should be able to post bond in the amount of One Thousand ($1000.00) dollars, which has previously been set by Judge Swanstrom, you should contact him at his office in Priest River.

Now, in addition, should you not desire to require the State of Idaho, or pardon me, the State of South Dakota issue a requisition through the Governor of the State of Idaho, you may waive extradition if you would like to. Now, at this time, would you prefer to wait for the requisition or would you like to waive extradition?

MR. STRUVE: I will waive extradition. I mean, I won't waive extradition.

THE COURT: You will not waive extradition. Very well then. You will be committed to the custody of the Sheriff of Bonner County for detention in the Kootenai County jail for a period of time not to exceed Thirty (30) days to await the issuance of the Governor's warrant. Do you have any questions with regard to this matter, Mr. Struve?

MR. STRUVE: Well, uh, I don't quite understand this. I mean, uh, this has been, uh, procedure going right directly to South Dakota and what happens here? I mean, what is this?

THE COURT: This is a charge that alleges nothing more than that you are a fugitive from South Dakota. This complaint would be dismissed upon your return to South Dakota.

MR. STRUVE: You mean the charges, here, are being dropped. You mean, er, uh . . .

THE COURT: Well, in this particular case. Turning now to Case No. 15967.

The warrant [4] issued on the basis of these proceedings reads:

The above named Defendant initially appeared in Court this date at 1:30 P.M.

---

4. I.C. § 19–4515 provides that the magistrate's commitment to jail is

. . . by a warrant reciting the accusation for such a time specified in the warrant as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused gives bail as provided in the next section, or until he shall be legally discharged.

He was advised of his right to counsel, of his right to confront witnesses and his right to produce evidence pursuant to I.C. 19–4531. Thereafter, Mr. Nick M. Lamanna was appointed to represent HARRY T. STRUVE.

Additionally, the Defendant was advised of his right to waive extradition and decline to do so.

NOW, THEREFORE, the above named Defendant is committed to the custody of the Bonner County Sheriff for a period of time not to exceed Thirty (30) days to enable the arrest of the accused on a Governor's requisition pursuant to I.C. 19–4515. Bail was continued in the sum of One Thousand ($1000.00) dollars.

.    .    .    .    .

The transcript of the arraignment hearing establishes that the recitations in the warrant are inaccurate in several respects. Petitioner was advised of a right to counsel only *after* he had admitted to his identity as Harry T. Struve and only *after* he was ordered to jail in lieu of bond. A right to counsel was mentioned only in connection with the right to challenge the validity of the anticipated governor's warrant.[5] Although Mr. Lamanna was appointed as counsel for such possible future hearing, he was not present at this arraignment. It is

apparent from the portions of the transcript quoted above that in a matter of minutes petitioner, who was without the aid of counsel, was arrested, arraigned and committed to jail.

There appears to be no reported Idaho criminal proceeding where a habeas corpus writ was utilized to challenge prerequisition arrest and detention. Nor do we find any substantial aid in the reports from other jurisdictions. This is understandable simply because such arrest and detention is ordinarily followed by a requisition from the demanding state and the issuance of a governor's warrant in the asylum state. It is generally held that arrest under the authority of a valid governor's warrant moots any irregularities which have occurred in the prior apprehension and detention of the alleged fugitive. *Levick v. Smedley*, 553 P.2d 482 (Alaska 1976); *McCoy v. Cronin*, 531 P.2d 379 (Colo.1975); *Application of Caudill*, 352 P.2d 926 (Okla.Cr.1960). In petitioner's case we are not concerned with a situation in which a governor's warrant has been issued.[6] We have before us on review only the prerequisition warrant, which was the sole basis of petitioner's detention at the time of the habeas corpus hearing in the district court.[7]

---

5. I.C. § 19–4510. Rights of accused—Right to apply for writ of habeas corpus.—No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he has been informed of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand legal counsel; and if the prisoner, his friends, or counsel shall state that he or they desire to test the legality of the arrest, the prisoner shall be taken forthwith before a judge of a court of record in this state, who shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. And when such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the public prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

6. We assume that no governor's warrant has ever been issued. Petitioner's counsel informed us at oral argument that petitioner had not yet been arrested on a governor's warrant,

notwithstanding that his detention on the prerequisition warrant then lacked but one week of a full year. We question the justification for his continued confinement since he was committed for a period of time not to exceed 30 days. It is true that, under the authority of I.C. § 19–4517, the magistrate may enter an order recommitting him "to a further day." However, the record shows no second commitment order. Unfortunately, our review must be of the record which was made before the district court at the time of the hearing on the writ of habeas corpus. This hearing was held on the 8th day of the 30–day detention period ordered by the magistrate.

7. At the conclusion of the habeas corpus hearing, the deputy prosecuting attorney stated: "The only thing before the Court today is the fugitive complaint and warrant that Mr. Struve is being held on, out of South Dakota." While petitioner's counsel primarily argued the "pretext" arrest on local charges, *supra* note 1, he did refer to "this type of hearing ordered under Chapter 45 under the Extradition Act," going

When the Idaho legislature in 1927 adopted the Uniform Extradition Act it recognized that it would be unfair to detain a person for any extended period without there being a judicial finding of probable cause for doing so. Accordingly, the Idaho version of the Extradition Act provides that a person arrested as a fugitive is entitled to have his answer to the fugitive complaint heard at a judicial examination as to the existence of probable cause:

19–4515. Commitment to await requisition—Bail.—If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged *and that he probably committed the crime*, and, except in cases arising under section 19–4506, that he has fled from justice, the judge or magistrate must commit him to jail by a warrant reciting the accusation for such a time specified in the warrant as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused give bail as provided in the next section, or until he shall be legally discharged. (Emphasis supplied.)

Under the plain provision of this statute, the magistrate was required to conduct a hearing. A prerequisition warrant committing petitioner to jail could not issue without a judicial finding that petitioner was the identical person charged with felony check offenses in South Dakota, and that petitioner probably committed the crime, and that petitioner fled from South Dakota justice. Except that there may be in this world more than one Harry T. Struve, the magistrate did establish that petitioner was indeed a Harry T. Struve.[8] Nothing in the brief arraignment accorded petitioner rose to the dignity of a hearing, or established the requisite probable cause which is absolutely essential to a valid order committing petitioner to jail.

The only thing in the record to which we can turn is the Idaho fugitive complaint itself, which has attached to it the three certified copies of the South Dakota complaints against a person named Harry T. Struve.[9] The criminal complaint for a fugitive warrant, while sworn to by a local officer, made no allegation that petitioner had committed any offense in South Dakota. It did allege the filing of three criminal actions in South Dakota; it did

on to challenge the establishing of probable cause:

As a matter of fact, your Honor, I even question the Complaint and I will ask the Court to take judicial notice of South Dakota law Chapter 23, which deals with the issuance of a Complaint and I would propose to the Court that those Complaints are not only illegal and unrecognized, but they are not sufficient under the Uniform Extradition Act and the law regarding fugitives, both under the Uniform Federal Act and Idaho's Pattern Act.

At the habeas corpus hearing there was no transcript of the proceedings before the magistrate on the arraignment on the fugitive warrant. There was a tape recording of that proceeding, but the record is clear that it was not listened to by the trial court prior to reaching a decision denying relief. Had the trial court had a transcript, as does this Court, we have no doubt that it would have reached the same view as we do on the validity of the prerequisition warrant.

The trial court did see the prerequisition warrant itself. This may have caused the court to infer that there had been a probable cause

hearing, when there had not, and that petitioner had been advised of his right to counsel, when he had not, and that he had been advised that he had a right to confront witnesses and produce evidence, when he had not.

8. The procedure by which this information was obtained is suspect where petitioner was not informed of his right to, nor did he have counsel, at the time he was asked the possibly incriminating question about who he was. I.C. §§ 19–801, 802, 851, 852 and 853.

9. Copies of the South Dakota arrest warrants were also attached to the Idaho complaint. These documents do not fulfill the requirement of the Idaho statute that an Idaho court is required to make its own determination of probable cause. Moreover, the inference to be drawn from the fact that the complaints were each subscribed to in front of a notary public—not a magistrate—is that the complainants never appeared before the magistrate at all. We also observe that two of the warrants were issued not by a magistrate, but by a "deputy." A perusal of the South Dakota laws does not show the position of "deputy magistrate."

name a Harry T. Struve as the alleged offender; it did allege that that Harry T. Struve was a fugitive; and "for further particulars" it made reference to the attached certified copies of the South Dakota complaints. Each such complaint is sworn to before a notary public, W. M. Kleibacker, and charges a Harry T. Struve in the very language of the South Dakota statute, S.D. C.L. 22–41–1.2, the essential ingredients of which are a no-account check made or delivered with an intent to defraud. One such complaint, signed by a Edwin M. Swanson, is illustrative of all three:

> Edwin M. Swanson of said County, being first duly sworn and examined on oath, by the undersigned W. M. Kleibacker, a Notary Public in and for the County of Lake and State of South Dakota, on his oath, complains and charges that on the 20th day of March, A.D. 1976, at Madison in the County of Lake, and State of South Dakota, Harry T. Struve did, then and there, willfully, intentionally, unlawfully, for himself, for present consideration, with intent to defraud, make, draw, utter or deliver to Casey Drug & Jewelry, Madison, South Dakota, a check, draft or order for the payment of money in the sum of $5.00, drawn upon and payable at Western State Bank, Sioux Falls, South Dakota, knowing at the time of such making, drawing, uttering or delivering that he did not have an account with such bank, in violation of SDCL 22–41–1.2, contrary to the form of the statute in such case made and provided; and against the peace and dignity of the State of South Dakota, . . .

▪ All three of the South Dakota complaints are devoid of any statement of underlying facts. Maureen Williams, who signed one, and Edwin M. Swanson, who signed the other two, are unidentified. Nothing whatever is set forth as to the transactions in which the checks were delivered and accepted. Nothing shows the sources of the complainants' information, either as to the transaction, or as to whether Harry T. Struve had a bank account.

This Idaho complaint with its attached copies of the South Dakota complaints is inadequate to justify any finding of probable cause.[10]

We need not look beyond our own statutory provisions and our own case law to ascertain what is necessary to make a finding of probable cause. "Probable cause" is no stranger to Idaho criminal jurisprudence. Where an offense is one which allegedly took place in Idaho, it has ever been the law that an arrest warrant will only be issued by a magistrate upon his being satisfied that there is probable cause (reasonable ground) to believe that the named defendant has committed the offense complained of.[11] The magistrate must satisfy himself

10. Neither the recitals of the prerequisition warrant nor the transcript of the actual proceedings suggest that the magistrate considered himself required to conduct a probable cause hearing required by I.C. § 19–4515. Nevertheless, we have reviewed what was before him on the bare possibility he may have made an entirely subjective and unrecorded determination that he could find probable cause from the papers in front of him.

11. Since the passage of Idaho's first territorial criminal code in 1864, our statutes have required a judicial officer's finding of probable cause as essential to effect a seizure of a person or his property without violating the United States Constitution, Fourth Amendment, and the Idaho Constitution, art. 1, § 17. I.C. §§ 19–505 and 506 govern warrants of arrest and provide:

> 19–505. The deposition must set forth the facts stated by the prosecutor and his witnesses, tending to establish the commission of the offense and the guilt of the defendant.
> 19–506. If the magistrate is satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest.

I.C. §§ 19–4403, 4404, 4405 and 4406 govern search warrants and provide

> 19–4403. A search warrant can not be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched.
> 19–4404. The magistrate must, before issuing the warrant, examine on oath the complainant and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.

of probable cause from "facts stated by the prosecutor and his witnesses, tending to establish the commission of the offense and the guilt of the defendant." I.C. §§ 19–505 and 506.

Long before *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1189, 25 L.Ed.2d 723 (1964); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Giordenello v. United States*, 357 U.S. 482, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), this Court, in the same year that the Idaho legislature improved the Uniform Extradition Act by adding to Section 15 the safeguard of a probable cause hearing, handed down the landmark decision of *State v. Arregui*, 44 Idaho 43, 254 P. 788, 52 A.L.R. 463 (1927). In *Arregui* a conviction based upon evidence seized under the purported authority of a search warrant was reversed for the lack of probable cause justifying the issuance of a warrant. In that case it was made clear that conclusory statements will not suffice. To justify a finding of probable cause the affiant must disclose some personal knowledge of the underlying facts and set them forth, and "conclusions must be drawn by the magistrate and not by the affiant." *Id.* at 63, 254 P. at 794.

> It is not necessary that the facts be sufficient upon which to base a verdict of a jury, but they must be sufficient upon which to find probable cause for the issuance of the warrant (that crime is being committed). *Id.*[12]

This Court 45 years later, in promulgating Rules of Criminal Practice and Procedure, incorporated the spirit and intent of I.C. § 19–505 and § 19–506 (note 11 *supra*) into Rule 4, which requires a finding of probable cause before a requested arrest warrant may issue. What will justify a finding of probable cause is succinctly but clearly set forth:

> Rule 4. Warrant or summons upon complaint. (a) . . . The finding of probable cause shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. . . .

Rule 4(a) provides for the situation where a magistrate may be in doubt as to the sufficiency of what has been laid before him:

> . . . Before ruling on a request for a warrant, the magistrate may require the complainant to appear personally and

---

19–4405. The depositions must set forth the facts tending to establish the grounds of the application, or probable cause for believing that they exist.

19–4406. If the magistrate is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, signed by him with his name of office, to a peace officer in his county, commanding him forthwith to search the person or place named, for the property specified, and to bring it before the magistrate.

**12.** In *Gerstein*, the United States Supreme Court stated that "both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common law antecedents." 420 U.S. at 111, 95 S.Ct. at 861. *Gerstein* concluded that ". . . the Fourth Amendment requires a judicial determination of probable cause as a

prerequisite to extended restraint of liberty following arrest." 420 U.S. at 114, 95 S.Ct. at 863. And,

> Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest. 420 U.S. at 125, 95 S.Ct. at 868.

The Idaho legislature, in the area of prerequisition detention, afforded that constitutional safeguard, I.C. § 19–4515, 47 years before *Gerstein*. This Court at that same early time drew the distinction between reasonable doubt as to guilt and probable cause where seizure of a person or his property was concerned. *Gerstein, supra*, 420 U.S. at 119, 95 S.Ct. at 866; *Arregui*, 44 Idaho at 63, 254 P. 788.

may examine under oath the complainant and any witness he may produce. . .

On a warrantless arrest, according to Rule 5(d), the magistrate is directed to discharge a defendant where the probable cause determination made after the arrest fails to justify the arresting officer's determination of probable cause.

Considering then that a person arrested either with or without a warrant, as a fugitive from the justice of another state, may be detained *indefinitely* under the provisions of our prerequisition detention statutes, and that such a person is not a candidate for either a preliminary hearing or for a speedy trial in Idaho, the wisdom of the legislature in affording such a person the safeguard of a probable cause hearing, I.C. § 19–4515, must be applauded. The philosophy evident in this statute was also reflected in our recent decision in *Walton v. State*, 98 Idaho 442, 566 P.2d 765 (1977). There, in reviewing a habeas corpus proceeding testing the validity of extradition on a governor's warrant, this Court said:

> While the courts of the asylum state are obligated to prevent the state from becoming a haven for fugitives from other states, the authority of the state to protect its citizens from illegal arrest or wrongful rendition must never be forgotten. 98 Idaho at 444, 566 P.2d at 767.

It may be noted that in governor's rendition proceedings, the courts of asylum states in several jurisdictions have accorded defendants the protection of the Fourth Amendment to the United States Constitution by requiring that the extradition documents of the demanding state establish probable cause. Where the extradition documents consist merely of affidavits and/or criminal complaints the underlying facts must be set forth. *Kirkland v. Preston*, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967); *Pippen v. Leach*, 534 P.2d 1193 (Colo.1975); *People v. Doran*, 401 Mich. 235, 258 N.W.2d 406 (Mich.1977); *Sheriff v. Thompson*, 85 Nev. 211, 452 P.2d 911 (1969).

The *Kirkland* court, in holding that a "Section 3182 affidavit must present facts sufficient to establish a showing of probable cause under the federal Fourth Amendment standards," [13] made this cogent observation:

> For apprehension of a fugitive under Section 3182 is plainly a criminal arrest since it deprives him of his liberty for the purpose of insuring his presence at a criminal trial. 385 F.2d at 676.

The court went on to explain in depth the rationale for its decision.

> The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. [Footnote omitted.] The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition. [Footnote omitted.] It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition. This right to probable cause confirmation seems especially appropriate in view of the fact that the accused will have no access to an evidentiary preliminary hearing on probable cause until he finally arrives in the accusing jurisdiction. [Footnote omitted.]

> In addition, the interests of the asylum state are advanced by its own probable cause determination. For it would be highhanded to compel that jurisdiction to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded, [footnote omitted] the asylum state will have expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary.

---

13. The court there was referring to the Federal Rendition Act, U.S.C. § 3182, which governs extradition requirements where the demanding state governor presents to the asylum state governor "a copy of an indictment found or an affidavit made before a magistrate."

Recognizing a probable cause requirement in Section 3182, moreover, conflicts with no compelling interests elsewhere in the legal system. If the demanding state does have probable cause data, it will be no real inconvenience to record this evidence in the extradition papers. Documenting probable cause in an affidavit is what the policeman in many jurisdictions, including the District of Columbia, must do if he is to secure an ordinary warrant for an arrest or search. And governors, or *habeas corpus* judges, will hardly be significantly burdened by having to study written submissions for probable cause in extradition cases. [Footnote omitted.] 385 F.2d at 677.

■ Where it is thus seen that arrest under a governor's warrant is such a significant interference with a person's freedom as to necessitate a showing of probable cause, it is only logical that we require strict adherence to our statutory requirement that probable cause be established as a condition precedent to prerequisition detention awaiting the probability that a governor's warrant will be issued.

What was said in *Kirkland* is equally true here, establishing probable cause at the hearing mandated by our statute, I.C. § 19–4515, is no real inconvenience. In this day of instant communication and rapid transportation, the identity of petitioner as the Harry T. Struve who allegedly passed bad checks in South Dakota could have easily been established. Also, how much effort would have been entailed in establishing the identity of Maureen Williams and Edwin M. Swanson, and briefly outlining their firsthand knowledge of the underlying facts which gave rise to the complaint? What problem would there have been in obtaining an affidavit from the bank stating that it had no account in the name of Harry T. Struve? Surely the two merchants (if that is not who Williams and Swanson are) who received the worthless

checks (two for $5.00 and one for $10.00) would have, on request, stated a brief resume of the transactions. But, nothing like this was done. Instead we see nothing but the bare allegations of the criminal complaints, mirroring the language of the check statute. The complaints did not make a showing of probable cause such as will justify the detention of petitioner.

■ One other point needs to be addressed and that is the matter of petitioner's right to counsel at the time of his arraignment on the fugitive warrant. It is not easy to understand why the magistrate informed petitioner that he would be entitled to counsel when he was arrested on a governor's warrant, and yet did not inquire as to whether petitioner desired counsel at that time when the magistrate was preparing to detain him. In Idaho, any person so detained has a right to counsel. It would indeed be an anomaly to allow a person counsel in challenging his arrest on a governor's warrant, but not in making his answer to a fugitive complaint at a proceeding which can lead to his indefinite incarceration in a county jail. The fact that the Idaho peace officer making the complaints alleges that a person has committed a public offense in another jurisdiction, and is a fugitive therefrom, does not make it any less a complaint of "a public offense" within the meaning of I.C. § 19–801, which provides that the accused person must be informed of his right to counsel. I.C. § 19–802 provides that a reasonable time be afforded for securing counsel, and I.C. § 19–852 sets forth circumstances under which counsel will be provided for a needy person. Perhaps, had petitioner been represented, a real probable cause hearing would have taken place.

For the reasons stated above, we reverse the trial court decision denying petitioner his discharge from custody. The district court is authorized and directed to forthwith, upon receipt of this opinion,[14] enter an

---

14. In all proceedings below the State was represented by the City Attorney of Sandpoint, Idaho, acting in that capacity and sometimes as Deputy Prosecuting Attorney. He did not file a brief, or appear to argue, preadvising this Court that such was his intention, and his advice showed that a copy of that advice was sent to the office of the Attorney General, on

order discharging the petitioner from any custody which ensued from the prerequisition warrant of May 19, 1976, and from any subsequent renewals of that prerequisition warrant founded on no more than the record which was before the magistrate on the date that the warrant first issued.

Reversed with directions. Order to accompany opinion.

BAKES, J., and DUNLAP, District Judge (ret.), concur.

DONALDSON, J., concurs in result.

SHEPARD, C. J., dissents without opinion.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice.

The State of Idaho, through the office of the Attorney General, though not a party to nor participant on this appeal, has asked for a rehearing.

As an excuse for not having participated in the appeal, the State points to office error in having initially viewed the habeas corpus proceeding against Sheriff Wilcox as being civil in nature.

The State wants the cause reheard in order to urge upon us that the issuance of a governor's warrant renders moot irregularities in prerequisition arrest and detention. Our opinion of February 3, 1978, might have sufficed to show our own knowledge in that regard, and therein we wondered why Struve had not been processed under a governor's warrant.

 In its petition, the State attaches a copy of a governor's warrant which issued on the 2d day of June, 1976, and a sheriff's return showing that a copy of the same was served upon Struve. The return, in all respects similar to a return of civil process,

does not show or suggest that Struve was arrested pursuant to the warrant. The petition does not suggest that Struve, if arrested, was taken before a magistrate as required by both state and federal statutes. Nor does the petition claim that the State of South Dakota continues to want Struve returned.

The petition for rehearing is denied.

DONALDSON and BAKES, JJ., and DUNLAP, District Judge (ret.), concur.

whose part also there was neither brief filed nor appearance for oral argument. Whether it was thought that the appeal was so lacking in merit as to be not dignified by a brief or appearance on behalf of the respondent, or whether it was thought that it was impossible to sustain the issuance of the prerequisition

warrant, in either event this Court was entitled to the benefit of an adversary presentation. The office of the Attorney General has on many occasions presented matters in briefs, and at arguments, which, though helpful to a defendant, greatly aided this Court in its endeavors to conduct a fair and just appellate review.