# Eugene Lovejoy v. State of Vermont and Joseph Patrissi

[531 A.2d 921]

No. 87-137

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ.**

Opinion Filed July 10, 1987

*Steve P. Dunham*, Franklin County Public Defender, St. Albans, for Petitioner-Appellant.

*Erick E. Titrud,* Chittenden County Deputy State's Attorney, Burlington, for Respondent-Appellee.

**Dooley, J.** This is an appeal from a denial of a petition for writ of habeas corpus. The petitioner, Eugene Lovejoy, was arrested on May 17, 1987, by a City of Burlington police officer based on an outstanding warrant for his arrest in New Hampshire. He was lodged overnight. On the following day, the Chittenden County State's Attorney presented an information and affidavit of probable cause to the Vermont District Court, Chittenden Circuit. The information charged petitioner with being "a fugitive . . . in violation of Title 13 V.S.A. § 4954" because he had fled from New Hampshire after being charged with the crimes of robbery and assault.

The information was accompanied by an affidavit of the arresting officer which recited the circumstances of the arrest and stated further that a teletype from New Hampshire verified the existence of the warrant and the desire of New Hampshire officials to extradite. The affidavit also stated that an officer from New Hampshire would appear on May 18th and bring the New Hampshire arrest warrant.

Based on the above documents, the district court found "probable cause," and recorded the finding on the information.[1] Conditions of release were set. Since the petitioner could not meet the conditions, a mittimus was issued committing petitioner to the correctional facility. The mittimus is of indefinite duration "so that he may appear before this court for trial."

A hearing on review of conditions of release was set for June 18, 1987. On that day, petitioner filed a motion for discharge and dismissal of the case, alleging the statutory time limit on arrest awaiting a Governor's warrant had expired and no extension had been sought. After a consolidated hearing on the motion to discharge and dismiss and a motion to reduce bail, the district court denied the motion to dismiss, and ordered that the petitioner be recommitted until August 15, 1987, when, in the absence of a

---

[1] We must in this expedited proceeding rely heavily on the representations of counsel since we have no transcripts of proceedings in the district court. Counsel for the State stated at oral argument that the orders of the district court on May 18, 1987, were based solely on the documents presented and now included in the appellate record before this Court, and that no transcript would be necessary. The record does not include a warrant from the New Hampshire court.

Governor's warrant, petitioner would be released. Although bail was reduced, defendant could not meet the reduced monetary requirement, and another mittimus was issued for an indefinite time.

On June 23, 1987, petitioner sought a writ of habeas corpus in the Franklin Superior Court. The amended petition recited four grounds for relief:

1) The information did not allege that petitioner "probably committed the crime," as required by 13 V.S.A. § 4955.
2) No facts appear of record to support a finding that petitioner "probably committed the crime."
3) The District Court has never issued a warrant.
4) The extension of custody granted pursuant to 13 V.S.A. § 4957 was unlawful since 30 days from arrest had elapsed and there were insufficient grounds for an extension.

No Governor's extradition warrant had been issued at the time of the hearing on the petition on June 25, 1987.

After hearing, the superior court issued an oral decision finding that the extension of the commitment time by the district court was lawful under 13 V.S.A. § 4957 and that the remaining grounds for relief raised by the petitioner were not properly before the court in a habeas corpus action.

This appeal followed. Mindful that the fundamental purpose of habeas corpus proceedings is to provide a quick and summary proceeding to determine the legality of the petitioner's imprisonment, *In re Fitts*, 124 Vt. 146, 151, 197 A.2d 808, 810-11 (1964), we expedited review in this Court. We reverse on the first issue raised by the petition, and accordingly do not reach the remaining issues.

As a preliminary matter, we must determine whether a petition for writ of habeas corpus is the appropriate vehicle for a challenge to prerequisition detention under 13 V.S.A. § 4955. The superior court reasoned that review by it of the May 18 order of the district court committing the petitioner to jail under § 4955 was not appropriate under the habeas corpus statute, 12 V.S.A. § 3952. The court stated that the "petition [for writ of habeas corpus] is not to be a substitute for appellate review." In a related argument, the State has argued in this appeal that any challenge to petitioner's original confinement based on the absence of a finding by the court "that [petitioner] probably committed the

crime" should have been made first in district court by way of motion to dismiss. In the absence of such a challenge, the State argues, petitioner should not be able to obtain relief through habeas corpus for this defect in the proceedings.

██ The reasoning of the superior court and the argument by the State both fundamentally misconstrue the nature of a proceeding under chapter 159 of Title 13, whereby an individual may be detained in this state as a fugitive from justice in another state pending a demand for extradition and issuance of a Governor's warrant thereon. Strictly speaking, the proceeding is not a criminal prosecution. Rather, it is a unique statutory procedure aimed at implementing the extradition provision of the federal constitution.[2] 13 V.S.A. §§ 4953-4954 allow, upon the required showing, that a person be arrested, and, if the requirements of § 4955 are met, that such person may be committed to jail to await extradition. There is never any charge, trial, or conviction for the "crime" of being a "fugitive from justice." Accordingly, there is no right to appeal to this Court under 13 V.S.A. § 7401 from decisions of the trial court made in the course of the proceedings authorized by §§ 4953-4955. See 13 V.S.A. § 7401 ("In criminal actions or proceedings . . ., the defendant may appeal to the supreme court as of right all questions of law involved in any *judgment of conviction . . . .*" (emphasis added)). Clearly, therefore, the principle of law relied on by both the superior court and the State—that habeas corpus relief is not a substitute for appellate review—while correct in the abstract, *LaRose* v. *Superintendent*, 146 Vt. 22, 24, 497 A.2d 30, 31 (1985), has no applicability in a case such as the one before us now.

██ A petition for writ of habeas corpus may be used for, among other things, a challenge to the authority of a court to order confinement to jail. *In re Norse*, 125 Vt. 460, 462, 218 A.2d 456, 458 (1966). The petition in this case is essentially a challenge to the district court's authority to make the orders of May 18 and June 18 committing petitioner to jail. Other courts, addressing similar challenges to prerequisition detention, have granted habeas corpus relief for unlawful confinements pursuant to stat-

---

[2] Article IV, Section 2, Clause 2 of the United States Constitution provides that:
 A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

utes analogous to 13 V.S.A. § 4955. See, e.g., *Struve* v. *Wilcox*, 99 Idaho 205, 213-14, 579 P.2d 1188, 1196-97 (1978); *Commonwealth* v. *Lester*, 456 Pa. 423, 428, 321 A.2d 637, 640-41 (1974); *Commonwealth* v. *McCaine*, 218 Pa. Super. 274, 277, 275 A.2d 867, 868 (1971). Moreover, we note that 13 V.S.A. § 4950, which provides that a person arrested under a Governor's warrant shall have an opportunity to challenge the legality of the arrest by way of habeas corpus, strongly supports our conclusion that a petition for writ of habeas corpus is the appropriate manner to challenge the legality of detention under § 4955.

It is helpful in reaching the merits to review the statutory extradition scheme set up in Vermont under this state's version of the Uniform Criminal Extradition Act, 13 V.S.A. §§ 4941-4969. The primary purpose of the Act, as noted above, is to implement Art. IV, § 2, cl. 2 of the United States Constitution which gives a state through its Governor the right to seek and obtain custody of a fugitive from justice found in another state. See *Michigan* v. *Doran*, 439 U.S. 282, 287-89 (1978).

The extradition is accomplished based on a warrant of the Governor of the asylum state which may be issued based on the request of the Governor of the charging state. See 13 V.S.A. §§ 4942-4952. The Uniform Act recognizes, however, that obtaining a Governor's warrant may take a substantial period of time, and that the asylum state must be able to act immediately when it locates a fugitive. Two methods are provided to address this exigency. Based on certain required findings, a Vermont judge or magistrate can issue an arrest warrant to hold the fugitive. See 13 V.S.A. § 4953. Alternatively, an officer or citizen can arrest the fugitive without a warrant "upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year." 13 V.S.A. § 4954. If the latter method is used, the accused must be taken before a judge "as soon as may be" and a complaint[3] must be made against the accused setting forth the grounds for arrest. *Id.*

At this point, 13 V.S.A. § 4955 requires the judge to make three specific findings:

---

[3] The complaint must set forth the grounds for arrest "as in section 4953"—that is, as if the circumstances were first presented to the magistrate. 13 V.S.A. § 4954. Petitioner has not argued that the complaint (here information) is deficient in this respect, and we do not consider this possibility.

1) The person held is the person charged with having committed the crime alleged; and
2) The person held "probably committed the crime"; and
3) the person "has fled from justice" (except in certain cases not relevant here).

Even when the required findings are made, however, the fugitive can be committed only for a limited time because the specific purpose of the detention is to allow the charging governor an opportunity to make an extradition request and the receiving governor an opportunity to issue a warrant thereon. See *id.*

The petitioner in this case alleges that the district court never made the second of the required findings, and could not have done so since the State provided no information on this element. In evaluating this claim, it is important to note that this case has never progressed beyond the § 4955 order. Petitioner is currently held under this commitment because no Governor's warrant has been issued.

We must first consider the State's claim that the district court could and did find that the petitioner "probably committed the crime" when it found probable cause on May 18th. The finding was based on an information that alleged that petitioner was a fugitive and was charged with robbery and assault in New Hampshire, accompanied by an affidavit that added only that a New Hampshire arrest warrant existed. In the absence of any allegation by the State that petitioner probably committed the crime, we are unable to conclude that the district court made the required finding on this point. Moreover, even if the State had alleged it, there was no information before the court upon which a finding could be made. The most that can be said of the court's finding of probable cause is that it concluded that there was probable cause to believe that petitioner had fled the state of New Hampshire while charged with the alleged crimes. This is far short of a finding that petitioner "probably committed the crime."

There remains to be considered the effect of this omission. On this point an historical perspective is helpful. In 1933, Vermont adopted the 1926 version of the Uniform Criminal Extradition Act. See 1933, No. 36. Section 15 of the Uniform Act contains the language now codified as 13 V.S.A. § 4955. In 1936, the National Conference of Commissioners on Uniform State Laws revised the

Uniform Act in significant respects. One of the main amendments was to drop the requirement that the judge find that the fugitive probably committed the crime. See 11 U.L.A. 255-56, historical note. While the Vermont Legislature adopted most of the revisions to the Uniform Act, including other revisions to 13 V.S.A. § 4955, it did not drop this requirement. See 1937, No. 48, § 6.

We can only surmise the reason for this action. In *State* v. *Taylor*, 70 Vt. 1, 39 A. 447 (1896), this Court adopted what is known as the "common law rule" on arresting fugitives from other states. Under the common law rule, a Vermont officer could arrest a fugitive who is alleged to have committed a felony in another state if the officer could make a "showing *prima facie* that a felony had been committed in another state, and that the party arrested was the perpetrator." *Id.* at 4, 39 A. at 448-49. The prima facie showing is made when the officer has "reasonable cause to believe that the person arrested had committed a felony in another state." *Id.* at 4, 39 A. at 449. In adopting this rule, the Court necessarily rejected one of the major alternatives—the "charge" rule. Under the charge rule, a warrantless arrest can be made solely upon a showing that the fugitive is charged with a crime in another state, without more. See generally Snow, *The Arrest Prior to Extradition of Fugitives from Justice of Another State*, 17 Hastings L.J. 767, 769-71 (1966).

In essence, the common law rule calls for a probable cause determination akin to that required by V.R.Cr.P. 5(c). The probable cause determination is an essential part of our criminal procedure designed to ensure that defendants "are not proceeded against criminally without good reason." *State* v. *Kelly*, 131 Vt. 582, 589, 312 A.2d 906, 910 (1973). We cannot condone the omission of a statutorily required finding that, if made, would have established probable cause in this case. The failure to make this finding renders petitioner's incarceration unlawful.

We have found one other decision on point from a state that has adopted a version of § 15 of the Uniform Criminal Extradition Act virtually identical to our § 4955. In *Struve* v. *Wilcox*, 99 Idaho 205, 579 P.2d 1188, the Supreme Court of Idaho considered a situation similar to that here. The Court held the continued detention was illegal and directed the release of the petitioner. *Id.* at 209-14, 579 P.2d at 1192-97. The Court also emphasized the importance of the probable cause determination in their criminal procedure. *Id.* at 210-11, 579 P.2d at 1193-94. We find the Court's

reasoning persuasive, particularly on the point that the requirements of the statute can be met without impairing the extradition process through the use of documents and hearsay testimony. See *id.* at 213, 579 P.2d at 1196.

One further point deserves mention. It is apparent to us that the district court did not follow the extradition statute in this case because it adopted a procedural tack as if this were a Vermont criminal proceeding. Thus, the district court's action started with an information alleging violation of 13 V.S.A. § 4954 as if that statute legislated a crime rather than authorizing arrest of out-of-state fugitives. The probable cause determination was apparently for the "crime" of violating 13 V.S.A. § 4954. Instead of a "warrant, reciting the accusation, for such a time, not exceeding thirty days, to be specified in the warrant" as specified in the statute, § 4955, the court issued a mittimus for an indefinite period to appear at trial.[4]

Our criminal procedure forms are helpful in enabling the trial courts to process a large volume of criminal cases in a fair and expeditious manner. There is, however, a danger in getting trapped by the forms without carefully considering the procedural steps being taken. Whether the remedy lies in individual preparation of extradition case procedural orders or in the creation of forms for extradition cases, it is clear that the trial courts should not continue to use criminal case forms for such proceedings.

*It is adjudged that said Eugene Lovejoy is illegally restrained in the Northwest State Correctional Facility, at Saint Albans, Vermont, and he is discharged therefrom. The mandate shall issue forthwith.*

---

[4] We give no specific effect to the differences between the court's action and the statutory procedures other than to note them.