# In re James H. Hval

[537 A.2d 135]

No. 87-464

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed November 5, 1987

*Steve Dunham*, Public Defender, St. Albans, for petitioner-appellant.

*Howard E. VanBenthuysen*, Franklin County State's Attorney, St. Albans, for respondent-appellee.

**Dooley, J.** Petitioner appeals from denial of a petition for a writ of habeas corpus after an arrest in Vermont for a probation violation in Rhode Island. We hold that because of his prior 90-day detention in Maine on the same charges, additional prerequisition detention in Vermont is improper, and we reverse.

Petitioner was arrested in Vermont on October 3, 1987, having sought entry into the state from Canada. His arrest without a warrant was undertaken under 13 V.S.A. § 4954, based on information that he was in violation of probation for crimes committed in Rhode Island. In accordance with the procedure set forth

in § 4954 for warrantless arrests, petitioner was brought before the Franklin County District Court on October 5, 1987 and was served with a complaint setting forth grounds for arrest, which, by the terms of § 4954, are the grounds stated in § 4953. The district court under § 4955 ordered petitioner to be lodged at the Northwest State Correctional Facility in St. Albans and ordered bail set at $15,000. Petitioner then sought a writ of habeas corpus in Franklin Superior Court, and the writ was denied. This appeal followed.

As we noted in *Lovejoy* v. *State*, 148 Vt. 239, 241-42, 531 A.2d 921, 923 (1987), the Court seeks to provide expedited review in habeas corpus cases, recognizing that habeas corpus is the proper mode of challenging a pre-extradition (or prerequisition) detention under § 4955.

On appeal petitioner contends first that 13 V.S.A. § 4954 does not authorize arrest on charges of probation violation, but is limited only to charges of "crimes" in the demanding state. Probation violations, he contends, are only grounds for prerequisition arrest where the State first seeks an arrest warrant under § 4953. The contention is based on an asserted distinction between § 4953, whose language includes both crimes and violations of bail, parole, and probation, and § 4954, whose language speaks only of "crimes."

The argument misreads the statute. Section 4953 does not present the commission of a crime or the violation of probation as alternative grounds for issuance of a warrant. A warrant will only issue under § 4953 where the person to be detained stands charged with a crime and, in addition, *either* has fled from justice before trial *or*, after trial and conviction, has escaped or violated bail, parole, or probation. The requirement that the accused have been charged with a crime is fundamental to both sections. Section 4954 does not purport to repeat all of the more detailed language of the preceding section, nor is there any need to do so. The second clause in § 4954 makes clear that in the court proceeding that follows arrest without a warrant the complaint must "[set] forth the ground for the arrest as in section 4953 of this title," which language incorporates the requirement of stating at that time whether the crime charged is accompanied by a further charge of either having fled from justice (i.e., prior to trial) or having violated conditions of bail, parole or probation after trial and conviction on the underlying crime.

Cases in other jurisdictions[1] make clear that the crime referenced under § 4954 is not the "crime" of probation violation, but is rather the original crime on conviction of which the probation was based in the requisitioning state. Once probation is violated, the accused stands charged with that original crime, and this is the crime which activates Vermont's authority to arrest under either § 4953 or § 4954. In *Wynsma v. Leach*, 189 Colo. 59, 536 P.2d 817 (1975), a habeas corpus petitioner made arguments similar to the petitioner's here, and the court responded:

> Both arguments are based on the erroneous notion that the "crime" with which the petitioner is charged is parole violation. In fact, petitioner is being extradited for his conviction of narcotics possession for which he is still under sentence. . . .
>
> . . . .
> . . . It is uniformly recognized that a crime that has resulted in conviction remains a charge under the constitution so long as the sentence resulting from the conviction is unsatisfied. [Citations omitted.] Consequently, a parolee is subject to extradition as a fugitive because, as a convict with an unexpired sentence, he remains criminally "charged."

*Id.* at 62, 536 P.2d at 819. See *Ingram v. Dodd*, 243 Ga. 788, 788, 256 S.E.2d 778, 779 (1979); and see also *Hughes v. Pflanz*, 138 F. 980, 983 (6th Cir. 1905) (same result under state law prior to adoption of Uniform Criminal Extradition Act).[2]

---

[1] As we pointed out in *Lovejoy*, 148 Vt. at 243, 531 A.2d at 924, Vermont's extradition statute is modeled on the Uniform Criminal Extradition Act, whose purpose is to provide for common standards and procedures in implementing Art. IV, § 2, cl. 2 of the United States Constitution.

[2] Petitioner makes two additional arguments which, in effect, repeat the contention that a prerequisition arrest under § 4954 may not be based on a probation violation in the demanding state. First he contends that there is no authority to hold an alleged probation violator while awaiting a Governor's warrant, absent a certified copy of the sworn charge or complaint and an affidavit upon which the out-of-state warrant is based. But it follows that if petitioner was properly arrested under 13 V.S.A. § 4954, he could be properly held under § 4955 while awaiting a Governor's warrant, since the documents referred to by petitioner are required only for issuance of a warrant under § 4953, not for an arrest without warrant under § 4954. For the same reason, petitioner is not correct in contending that the commitment was unlawful in the absence of a judicial warrant under § 4953.

At oral argument petitioner also asserted that the district court did not make the mandatory finding under 13 V.S.A. § 4955 that the accused "probably committed the crime." See *Lovejoy* v. *State*, 148 Vt. at 244, 531 A.2d at 924. In *Lovejoy* petitioner had been charged with robbery and assault in New Hampshire but had not yet been convicted. The State of Vermont was bound to allege, and the district court to find, that petitioner "probably committed the crime," since there had been neither trial nor conviction in the demanding state at that time. In the case at bar, though Vermont's Complaint and Petition for Interstate Rendition, filed in the district court, first erroneously refers to the "crime of violation of probation," it then proceeds to recite the specific charges on which petitioner was convicted in Rhode Island, together with date of conviction and length of sentence. Since the crime recited in § 4955 is the Rhode Island conviction, the district court's conclusion that petitioner "probably committed the crime" was a necessary one, since a petition for habeas corpus questions only the legality of petitioner's detention and looks no further. *In re Everett*, 139 Vt. 317, 319, 427 A.2d 349, 350 (1981).

Petitioner next argues that since he was previously held in Maine for 90 days awaiting a Governor's warrant, he may not be further held by Vermont in the absence of a Governor's warrant.[3] While that is a proper interpretation of the law concerning successive detentions within the same jurisdiction prior to receipt of a Governor's warrant, *People* v. *Weizenecker*, 89 Misc. 2d 814, 815-16, 392 N.Y.S.2d 813, 815 (Crim. Ct. 1977), the validity of successive prewarrant detentions in different jurisdictions is a novel question.

█ Two preliminary points are essential. First, the initial arrest of petitioner in Vermont under § 4954 was perfectly regular and proper. Petitioner was still a fugitive from Rhode Island at the time of his arrest in Vermont, and his detention by U.S. Customs authorities based on accurate information to that effect followed properly from a literal reading of 13 V.S.A. § 4954, given our conclusion that a warrantless detention is proper under the statute for probation violations in another state. Every prearrest condi-

---

[3] This argument was not raised below. However, at the argument before this Court, counsel for the State agreed that it should be considered and stipulated to the essential facts.

tion under § 4954 appeared to have been met when petitioner crossed the border into Vermont. Prior to his appearance in the Franklin District Court there was no appropriate opportunity for Vermont to consider petitioner's claim that he had been already detained for 90 days without the arrival of a Governor's warrant.

Second, there is no doubt that the failure of Rhode Island to act prior to the expiration of the 90-day detention limit in Maine would not have barred extradition either in Maine or in this state based on the valid issuance of a Governor's warrant. *Glavin* v. *Warden*, 163 Conn. 394, 398, 311 A.2d 86, 88 (1972); *May* v. *Sexton*, 35 Ill. 2d 585, 588, 221 N.E.2d 283, 285 (1966); *In re Simpson*, 2 Kan. App. 2d 713, 714, 586 P.2d 1389, 1390 (1978); *State ex rel. Brown* v. *Hedman*, 280 Minn. 69, 71, 157 N.W.2d 756, 757 (1968); *People ex rel. Brandolino* v. *Hastings*, 72 A.D.2d 821, 821, 421 N.Y.S.2d 893, 894 (1979). The cases make a clear distinction between the right of an accused to seek the termination of a prerequisition detention and the right of a requisitioning state to perfect extradition through a Governor's warrant any time a person charged with a crime is found in another state, during or after detention.

The purpose of the 90-day limit imposed by the Uniform Act has been stated as follows:

> The logic for the ninety-day time limitation as to "committing" a defendant regarding extradition is twofold. The first is that ninety days is a reasonable period for a "governor's warrant" to be forthcoming. Second, such a time limit places a reasonable time for a defendant *confined to jail.* During this period, the defendant is at an obvious and distinct disadvantage in that he can only resist his incarceration and the entire extradition procedure from a very poor tactical standpoint—the jail cell. Confinement greatly impairs an individual's ability to prepare and assist in his defense of the charges.
>
> The ninety-day limit keeps the time in which a defendant can be in this vulnerable position to set limits.

*People* v. *Williams*, 89 Misc. 2d 269, 273, 391 N.Y.S.2d 518, 521 (Crim. Ct. 1977) (emphasis in original). As the court noted in *State* v. *Haynes*, 8 Ohio App. 3d 119, 123, 456 N.E.2d 1279, 1284 (1982), "[the] limitation to ninety days is an inducement to out-of-state authorities to expedite the procedure insofar as they are

capable of doing so or face the risk of the accused being again set at liberty."

In looking at these purposes, it is not determinative that the same or different jurisdictions are involved in successive prerequisition detentions. Since Rhode Island had not acted within 90 days to request extradition, the petitioner at bar had the right to his freedom in Maine, even though that right would not bar completion of the extradition process at some later date. Rhode Island could not have expected Maine to detain the petitioner beyond the statutory 90 days, and Rhode Island's equities should rise no higher because petitioner has traveled from Maine to Vermont. The Maine court order releasing petitioner from detention was not with prejudice vis-a-vis the ultimate issue of extradition (see *Murphy* v. *Boehm*, 443 So. 2d 363, 366 (Fla. Dist. Ct. App. 1983)), but it should be deemed binding and final on the narrower question of prerequisition detention under Maine's equivalent of 13 V.S.A. § 4955. See *Commonwealth ex rel. Douglass* v. *Aytch*, 255 Pa. Super. 195, 200-02, 310 A.2d 313, 315-16 (1973) (Spaeth, J., concurring). To paraphrase the language of the concurrence in *Aytch*, after the action by the court in Maine, Rhode Island had no further authority to lodge a detainer against the petitioner. And once the facts about the Maine release order were before the district court, Vermont should not have further recognized the detainer request. Should Rhode Island in the future seek extradition, and a Vermont rendition warrant is then issued, petitioner may be rearrested on the strength of that warrant, and the Maine order will not stand as an adjudication on the issue of the existence of proper grounds for extradition.

There are other considerations that weigh heavily in favor of this result. The Vermont Legislature has not created a durational limit on detention different from the law and policies in other states. Almost all states in the country, including the three states involved in this case, have adopted the Uniform Criminal Extradition Act with its provision that 90 days is a reasonable limit to hold a person while awaiting a Governor's warrant. When the policies among states are identical, we must be careful that the act of crossing a state boundary does not create different rights, undermining the expressed policies of all the states.

We also note that the 90-day limit of the Uniform Act was first adopted in 1936. See *Lovejoy* v. *State*, 148 Vt. at 244-45, 531 A.2d

at 925.[4] Since that time, technology has reduced the time necessary to prepare and transmit documents like a Governor's warrant. At the same time, our society has become far more mobile, creating a greater likelihood that extradition cases will involve more than two states. We think these changed circumstances further underscore the rule we adopt.

Finally, we see the balance achieved by this result is very much in keeping with the strong constitutional policies of comity and accommodation that underlie the Extradition Clause. Comparing it to the Commerce Clause, the Supreme Court has declared:

> In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy.

*Michigan* v. *Doran*, 439 U.S. 282, 288 (1978). And see *Biddinger* v. *Commissioner of Police*, 245 U.S. 128, 132-33 (1917). The summary and mandatory nature of the extradition proceeding in the asylum state and the ultimate reliance on the vindication of the rights of the accused in the demanding state assures a minimum of friction between states. See *Appleyard* v. *Massachusetts*, 203 U.S. 222, 227-28 (1906).

By holding persons beyond reasonable limits in asylum states while awaiting the constitutional process to commence with a Governor's warrant, we undercut the comity that extradition is meant to foster. Petitioner has committed no crime in Vermont or Maine and yet we are asked to hold him for long periods of time without a remedy. We cannot, on the one hand, strongly adhere to the principle that petitioner will have his day in court in Rhode Island and, on the other hand, enforce an unreasonable delay in bringing that day about while petitioner remains incarcerated. Only by observing all of the provisions of the Constitution and the Uniform Act will Vermont encourage like conduct by other states and thus promote all of the relevant purposes.

*The judgment of the superior court is reversed and the writ of habeas corpus is granted, releasing James Hval from the North-*

---

[4] The ninety-day limit was not in the original version of the Uniform Act adopted in 1933. See 1933, No. 36, § 17. It was added in 1937. See 1937, No. 48, § 7.

*west State Correctional Facility at St. Albans, Vermont. The
mandate shall issue forthwith.*